# Louisville & Nashville Railroad Co. *v.* Boykin.

### *Trover for Conversion of Gravel.*

1. *Conveyance of "two acres of gravel;" description of lands.*—A conveyance to a railroad company of the right of way through the grantor's lands, and "also two acres of gravel on said land nearest said railroad as at present located through said tract," passes a freehold estate in the gravel, if words are used sufficient to identify the lands on which it is situated ; but no words being used by which the two acres can be definitely ascertained, the instrument is inoperative as a conveyance, though a court of equity will enforce it, if fair and founded on a valuable consideration, as an agreement to convey.

2. *Description of lands conveyed; blanks.*—An instrument purporting to be a conveyance of fourteen acres of land, the lines, courses and boundaries of which are left in blank, and no other identifying features given, is inoperative as a conveyance; but, when it is founded on valuable consideration, and the grantee is put in possession, it will be enforced in equity as an agreement to convey.

3. *Possession of part of tract of land, under claim to entire tract.*—Actual occupancy of part of a tract of land, into the possession of which a party has entered under claim and color of title, draws to it constructive possession of the entire tract so claimed; but, where the instrument under which he entered and claims is inoperative as a conveyance, by reason of vagueness and uncertainty in the description and boundaries of the tract, his possession is limited to the part actually occupied.

4. *Subsequent conveyance, correcting errors in first; takes effect when.* A subsequent deed, made for the purpose of correcting errors and defects in a prior deed, takes effect for many purposes, as between the immediate parties, from the day on which the first was executed; but, as to the rights and equities of third persons, it takes effect only from the date of its execution.

5. *Junior equity, with legal title, as against senior equity.*—Where two purchasers of land claim from the same vendor, the deed to each being inoperative as a conveyance, though founded on a valuable consideration, and valid in equity as an agreement to convey ; the junior purchaser can not, by procuring a conveyance of the legal title, defeat the superior equity of the senior, of which he had notice, actual or constructive.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Mrs. Frances Boykin, the wife of Burwell Boykin, against the appellant, " a corporation under the laws of Kentucky," to recover damages for the alleged conversion of " eighteen hundred car-loads of gravel;" and was commenced on the 9th May, 1884. The defendant pleaded not guilty, and justification ; and also two special pleas, one of which denied the plaintiff's ownership and possession of the

land from which the gravel was taken, and the other averred that the land belonged to the South and North Alabama Railroad Company, under whose license defendant entered and took the gravel. Issue was joined on all of these pleas.

The land from which the gravel was taken is in Elmore county, but all objection on account of venue was waived. The complaint described the land as situated " in the northeast quarter of section thirty-five (35), township eighteen (18), range seventeen (17) east, in the Cahaba Land District, and in that part of said quarter-section immediately south of the north section line, and adjacent to the right of way of the South and North Alabama Railroad Company, next to and westerly from a line fifty (50) feet from the center of the railroad track, and parallel thereto." The plaintiff claimed the land as part of a tract containing fourteen acres, which was conveyed to her by W. T. Lary and wife, by deed dated November 22d, 1881, in which the boundaries, courses and distances of the land intended to be conveyed were left in blank; and under a second deed executed to her by said Lary and wife, which was dated January 26th, 1884, and purported to be given for the purpose of curing the defects of the first. The defendant claimed the right to take the gravel under a conveyance executed by said Lary and wife to the South and North Alabama Railroad Company, which was dated August 30th, 1873, but was not recorded until the 21st February, 1883; and it was admitted that the defendant had all the rights conferred by said deed on said railroad company. The material parts of these several deeds are copied in the opinion of the court. "The gravel was taken from a hill-side, which ends near the railroad's right of way; the gravel commencing some fifteen or twenty feet from a line fifty feet from the center of the railroad track." It was dug and carried away at different times during the year 1883, commencing in March or April; and when the plaintiff's husband notified the agents of the railroad company that he claimed the land as trustee for his wife, he was informed that the railroad company also claimed it under a deed from Lary and wife; but he testified, as a witness for the plaintiff, that he had no notice of any claim on the part of the railroad company before that time, and then searched the records in vain.

On all the evidence adduced, which it is not necessary to state, "the court instructed the jury, among other things, that while, as a general rule, actual possession and occupation of a part of land, *bona fide*, under claim and color of title, was constructive possession of all the land conveyed by the deed; yet this principle had no application in this case, and the fact of the use and occupancy of the right of way and depot, mentioned in the deed from Lary, was not constructive notice to

36

plaintiff of the right or title of the South and North Alabama
Railroad Company to the two acres of gravel on said land near-
est said railroad." The defendant excepted to this charge, and
requested the court to instruct the jury, " that they must find
for the defendant, if they believed all the evidence." The court
refused this charge, and the defendant excepted to its refusal.

The charge given, the refusal of charges asked, and several
rulings on evidence to which exceptions were reserved, are now
assigned as error; but an indorsement on the transcript, signed
by the appellant's counsel, states that they desire to raise the
question of the respective rights of the parties in and to the
gravel, and consent that, "if the court should be of opinion
that the defendant has no right or title to take the gravel as
against the plaintiff, then the judgment may be affirmed."

THOS. G. JONES, and J. M. FALKNER, for appellant.—(1.) The
railroad company having taken actual possession of a part of
the land conveyed by its deed, claiming title to the entire estate
thereby conveyed, was constructively in possession of the entire
estate.—*Ryan v. Kilpatrick*, 66 Ala. 332; *Ellicott v. Pearl*,
10 Peters, 44; *Hall v. Powell*, 8 Amer. Dec. 722. (2.) This
possession was notice to all the world, and Boykin was charged
with notice thereof, though the deed was not recorded.—*Hen-
dricks v. Kelly*, 64 Ala. 388; *Taylor v. Buckner*, 2 A. K. Mar.
18, or 12 Amer. Dec. 358; Perry on Trusts, vol. 1, § 223;
2 Brick. Dig. 519, § 181. Being chargeable with notice, and
purchasing without inquiry as to the character and extent of
the possession asserted by the railroad company, plaintiff can
not claim protection as an innocent purchaser for valuable con-
sideration.—*Herbert v. Hanrick*, 16 Ala. 597; *Wilson v. Wall*,
34 Ala. 306; *Hendrix v. Kelly*, 64 Ala. 388. (3.) If the deed
to the railroad company did not pass the legal title to "two
acres of gravel *land*," but only to the gravel contained in them,
with the right to dig and remove, it separated the ownership of
the surface from that of the gravel beneath, and there never was
any actual possession of the gravel until it was taken by the
defendant.—*Caldwell v. Copeland*, 37 Penn. St. 427; Lead.
Cases on Mines, B. & W.'s notes, 32–3; *Sewman v. Vaudry*, 16
Vesey, 390. (4.) But the description in the conveyance is suf-
ficient to pass the legal title to two acres of the gravel land, and
they are easily identified.—*Chambers v. Ringstaff*, 69 Ala. 145;
*Hurley v. Brown*, 98 Mass. 545; *Scanlan v. Geddes*, 112 Mass.
15; *Chester Co. v. Lucas*, 112 Mass. 425; *Morris v. Stuart*,
1 Iowa, 377; *Wilkinson v. Roper*, 74 Ala. 148; 49 Wisc. 291.
*Acre* is descriptive of space or surface, and not of quantity;
and "two acres of gravel" will be construed, if necessary to
give effect to the grant, to mean two acres of *gravel land*—that

[Louisville & Nashville R. R. Co. v. Boykin.]

is, two·square blocks of ·land, each seventy yards square; ·and these must be nearest the railroad.—1 Iowa, 377; 8 Sawyer, 331; *Wilkinson v. Roper*, 74 Ala. 148. (5.) Plaintiff's first deed is void for uncertainty, and because the land was at the time in the adverse possession of the railroad company.—*Johnson v. Cook*, 72 Ala. 537; *Bernstein v. Humes*, 60 Ala. 582. (6.) Plaintiff's second deed was void on account of said adverse possession; and if otherwise valid, it can not be allowed to relate back, to the prejudice of the defendant's existing rights or equities, of which Boykin had notice.—*Hendon v. White*, 52 Ala. 606.

WILLIAMSON & HOLTZCLAW, and SEMPLE & SON, *contra*, cited *Pepper v. O'Doud*, 39 Wisc. 538; *Tritt v. Roberts*, 64 Geo. 156.

CLOPTON, J.—The parties having waived a decision of all the questions involved, other than the right and title to the gravel in controversy, and as the judgment is to be affirmed or reversed as we may find the right to be in the plaintiff or defendant, we shall confine our consideration to this question.

The right of the defendant is founded on a deed made August 30, 1873, by Lary and wife, who formerly owned the land on which the gravel is located, and from whom both parties derive title, to the South and North Alabama Railroad Company. In consideration of one hundred dollars, the erection of a depot, and running the railroad on and along the lands of the grantor, which are described by the numbers of the government survey, the grantors bargain, sell, and convey to the railroad company, "a strip, tract, or parcel of land, fifty feet wide on each side of the center line of their railroad; also, a strip or tract of land sixty feet wide, parallel with said railroad for six hundred feet, beginning three hundred feet south of public road at the station, and running north; also, two acres of gravel on said land, nearest said railroad, as at present located through said tract." The gravel in question is on the land described in the deed as owned by the grantor, and the nearest to the railroad, commencing fifteen or twenty feet from a line fifty feet from the center of the railroad track.

Land, in its broadest signification, includes not only the surface of the earth, but the mines, quarries, and every thing under it; and whoever has the fee in the surface, presumptively owns every thing of a permanent nature, under or over it. Notwithstanding, it is competent for the owner to convey the mines or quarries by separate grant, vesting in one person a freehold in the soil, and in another a freehold in the mines or quarries, and to sever the ownership of the surface from the ownership of that which is under it. There may exist a double

ownership, or two freeholds in the same parcel of land.—2 Wash. on Real Prop. 375. This occurs usually in those States where minerals abound, and, no doubt, exists to a considerable extent in this State.

The controverted questions, that have generally arisen, have been as to the character of the right or estate granted—whether a license, or a right to dig and carry away in the nature of an easement, or a freehold in the mines. In *Riddle v. Brown*, 20 Ala. 412, where it is recognized that a distinct title to the surface may be in one person, and to that which is underneath in another, and that mines may form a distinct possession and different inheritance from the surface, it is said: "There may be a right to dig ore in the mines of another, as distinct from the ownership of the mines, as that may be from the ownership of the surface. This right to dig ore in the mines of another, if it be to one and his heirs, is an incorporeal hereditament. . . . It is a permanent interest in the lands of another, to which a legal title can only pass by deed." The right, existing in parol, was held to be a license and revocable, not being coupled with an interest in the land. Had it been reduced to writing, conformably to the statute of frauds, the court would have held that it created a fee simple in the easement. In 2 Wash. on Real Prop. 376, the author, speaking of what the owner may do, observes: "Thus, he may grant to another the entire body of minerals within his land, retaining only his property in the surface, whereby he would create an independent freehold and inheritance in his grantee; or he may grant a right or privilege to take minerals from his land, without parting with the fee in any part of the same, and may still retain his ownership in all the minerals contained therein which shall not have been taken and appropriated by his grantee. In the latter case, he only creates and grants an easement to his grantee,—a mere incorporeal hereditament."

In Pennsylvania, the character of such grants has arisen more frequently, and has been more thoroughly considered than in other States, unless in California, where they have made unto themselves laws regulating mines and mining. In *Caldwell v. Fulton*, 31 Penn. St. 487, it was held that a conveyance of the full right, title, and privilege of digging and taking away stone-coal to any extent, under any of the land of the grantor, is a grant of land, and not an incorporeal hereditament. Livery of seizin not being necessary, and land being transferable by deed, the distinguishing characteristics, in determining the estate created, to which the inquiry should be directed, are: whether the grant is restrictive, containing reservations and limitations on the exercise and control of the right; or whether it is an exclusive right to minerals in place, with absolute dominion and disposi-

tion. If the former, it is an incorporeal hereditament, the owner of the surface retaining his ownership in all minerals not actually taken and carried away; and if the latter, a corporeal hereditament—a freehold—is created, which is not forfeited by *non-user*. Applying these tests to the deed under consideration, it created, if operative as a conveyance, in the South and North Alabama Railroad Company, a freehold estate in the gravel.

The deed does not describe the two acres of gravel, with sufficent definiteness and certainty to operate a legal conveyance. If it be said that the point nearest the railroad is given as the point of beginning, no *criteria* are furnished, by which to determine in what directions, and how far in each direction, the lines shall be run, so as to include two acres of gravel. Neither the width nor the length of the bed of gravel is given, nor whether the entire bed contains only the quantity intended to be conveyed. Had a definite starting-point and the base line been named, the lines would then have been run so as to include two acres of gravel in superficial extent, and as nearly square as practicable.— *Wilkinson v. Roper*, 74 Ala. 140. · The cases of *Morris v. Stuart* (1 Iowa, 375), and *Santa Cla. Min. Asso. v. Quick. Min. Co.* (8 Sawyer, 330), to which we have been cited, were bills in equity, either for a specific performance, or to control the legal title.

In *Hunt v. Freeman*, 63 Ala. 335, it was held, that a description of lands in a mortgage of about one thousand and fifty acres, the boundaries of three sides being stated, is too vague, no fact being stated from which the boundary of the fourth side could be determined. It was also held, that the description was not so indefinite and uncertain as to affect the validity of the mortgage, since it could be rendered certain, and identify the lands intended to be conveyed. While the conveyance to the company is not sufficient as a grant, the uncertainty of description is not so great as to destroy its efficacy for all purposes. If reasonable, some effect should be given to it; and being founded on a valuable consideration, it may be sustained as an agreement to convey, which, if fair and just, a court of equity will specifically enforce.—*Pollard v. Maddox*, 28 Ala. 321; *Blythe v. Dargin*, 68 Ala. 370; *Meyer v. Mitchell*, 75 Ala. 475.

The right of the plaintiff is founded on a deed made, November 22, 1881, by Lary and wife, to fourteen acres, including the gravel in question, in consideration of one hundred and thirty dollars; and on a corrected conveyance made January 26, 1884. The first deed to the plaintiff is also inoperative as a conveyance, because of vagueness and uncertainty in the description of the subject-matter—the lines, courses, and bound-

aries being left in blank. The plaintiff paid the purchase-money, and was let into possession; and this instrument, as the paper title to the railroad company, and on the same principles, may be regarded as an agreement to convey.

Neither party had actual possession of the gravel, until the spring of 1883, when the defendant constructed a side-track, took possession, and carried away the gravel, for which the action is brought. While actual occupancy of a part of a tract of land, into the possession of which a party had entered under claim and color of title, draws constructive possession of the entire tract, where the color of title is inoperative as a conveyance, by reason of vagueness and uncertainty in the description and boundaries of the tract, the possession is limited to the *pedis possessio.—Shackleford v. Bailey*, 35 Ill. 587; *Livingston v. Penn. Iron Works*, 9 Wend. 517; *Humphries v. Huffman*, 33 Ohio St. 404; *Eye v. Medler*, 82 Penn. St. 87. The subsequent deed of January, 1884, which was made to correct the errors and uncertainties in the first deed, relates back to, and takes effect from the execution of the first deed, for many purposes; as between the immediate parties; but, as to the rights and equities of third persons, takes effect only from the date of its execution.—*Chapman v. Fields*, 70 Ala. 403. Before the plaintiff obtained the legal estate, she had notice of the prior equity of the railroad company.

We have, then, the case of equal equities, at the time the gravel was taken—of a senior and junior equitable estate; equal, in that they originated in the same way, by contract of purchase from a common vendor; and both equitable, because of vagueness and uncertainty in the instrument purporting to convey the title,—both vendees acting in good faith, and paying a valuable consideration. In such case, the rule applies, that the party who has the prior equity in point of time, is entitled to the like priority in point of right. *Qui prior est in tempore, potior est in jure.*

The acquisition of the legal estate by the plaintiff, after notice of the equity of the railroad company, can not avail to defeat or override such equity. Whatever may be the conflict of judicial opinion, and however irreconcilable, the rule is settled in this State—has become a rule of property, which we are not at liberty to disturb—that a court of equity "will not permit the party, having the subsequent equity, to protect himself by obtaining a conveyance of the legal title, after he has either actual or constructive notice of the prior equity." *Flash v. Ravisies*, 32 Ala. 451. In 2 Pom. on Eq. Jur. (§ 756), the author illustrates the rule as follows: "If an owner of land gives an agreement to convey to A., who pays all, or part of the price, and afterwards gives a second agree-

[Weatherly v. Med. & Surg. Society.]

ment to convey to B., who enters into the contract, and pays all, or part of the price, and without any notice of the prior claim of A., clearly B. would not have obtained an equitable advantage from the fact of his contract and payment without notice; A.'s interest would be of the same character and extent, and his priority of time would give him priority of right. To say that B., being thus inferior in equitable right, may, upon receiving notice of A.'s contract, obtain a conveyance from the owner, and thus establish a precedence over A., is to misapply the doctrine of *bona fide* purchaser, and to ignore a familiar principle of equity, that one who acquires a title with notice of a prior equity, takes it subject to that equity."

The gravel was taken from the place designated by the vendor prior to and at the time of the execution of the deed, and understood by the parties as the two acres of gravel intended to be conveyed. The legal title was in their common vendor, and the equities of the parties were equal. The South and North Alabama Railroad Company, under whom the defendant claims, having the senior equity, had the superior right to the gravel, on which they can successfully defend an action of trover. On the undisputed facts, the affirmative charge in favor of the defendant should have been given.

Since the execution of the conveyance of January, 1884, the legal title has been, and is in the plaintiff; the equitable estate, in the defendant.

Reversed and remanded. -