Robert G. Johnson v. J. T. Robison, Commissioner of the General Land Office et al.

No. 3565.   Decided March 22, 1922.

(240 S. W., 300.)

1.—Public Land—Sale—Forfeiture—Repurchase—Classification.

Where a purchaser of school land had forfeited his rights by default in payment of interest, and sought to repurchase same under the preference given him by the Act of April 18, 1913, Laws, 33d Leg., ch. 160, p. 336, the Board of Appraisers provided by that law had no authority to change the former classification of same from mineral to dry grazing land, their powers being limited by the Act to appraisement. But the Land Commissioner himself had authority to reclassify.   (P. 443).

2.—Same—Reclassification.

Section 1 of the Act of April 18, 1913, giving the former owner ninety days "after notice of the classification and appraisement of his land" in which to repurchase, contemplated the possible reclassification as necessary to its proper appraisement.  And this being within the authority of the Land Commissioner, where the Board reclassified the land as dry grazing, in place of the former classification as mineral land, and this was accepted by the Land Commissioner by entering it in his office as dry grazing land, and as such the former owner repurchased it by complying with the Act in reference thereto, this was in effect a reclassification by the Commissioner, and the purchaser buying it under and in reliance on such classification was entitled to receive an unconditional patent, not reserving the mineral rights to the State.   (Pp. 443-445).

3.—Same—Application to Repurchase.

A statement by a purchaser of school land, upon a general form prepared for his application, that he was buying for agricultural and grazing purposes only, and that "if it is classified as mineral lands the sale to me is upon the express condition that the minerals therein shall be and are reserved," did not preclude his right, on compliance with the law, to receive an unconditional patent without reservation of the minerals, where the land was classified as dry grazing and not as mineral.  The form was designed to cover applications for either classification, and precluded such claim by him only in case of land classified as mineral bearing.   (P. 446).

Original application to the Supreme Court by Johnson for a writ of mandamus against Robison as Commissioner of the General Land Office, with whom E. J. Clarke and others were joined as co-respondents.

The fact that Chief Justice Cureton and Justice Greenwood were disqualified to sit in this case having been certified to the Governor, Mr. S. J. Brooks was appointed Chief Justice and Mr. Cary M. Abney Associate Justice, to sit with Mr. Justice Pierson in the disposition of this cause, and they were duly qualified as members of the court.

*Joe D. Johnson, Gillis A. Johnson* and *Carl W. Wade,* for relator.

Chapter 160 of Act approved April 18, 1913, General Laws, Regular Session, 33rd Legislature, page 336, is valid and authorized the Board of Appraisers appointed thereunder to reclassify and re-value the land forfeited for nonpayment. Public lands classified and sold as grazing lands do not come within the purview of Chapter 83 of the Acts of 1917, Regular Session, page 158, and are not subject to the provisions of said act. Caption and body of the Act, Acts 1913, p. 336; Harper v. Terrell, 96 Texas, 479; Sutherland on Statutory Construction, Pars. 93, 210, 341; City of Austin v. McCall, 95 Texas, 575; Otoe County v. Baldwin, 111 U. S., 16; Tolleson v. Rogan, 96 Texas, 433; Koy v. Schneider, 221 S. W., 885.

Assuming for the purposes of this argument that the reclassifica-tion by the Board was of no force and effect and that they were limited in their powers to revaluing, nevertheless the land in ques-tion was classified as grazing land and was not within the purview of Chapter 83 of the Acts of 1917, Regular Session, page 158, and consequently not subject to mineral entry. After the Board in fact classified the land in question as grazing land, on which Board sat J. T. Robison the then and now Land Commissioner, the Land Com-missioner in his official capacity made entry of the classification and appraisement on the records of the General Land Office that the land was classified as grazing land and O. Kd. it. When in March, 1914, Rawlins' application to repurchase was made, the award was endorsed "Class, Graz. O. K." and signed by the Land Commissioner in his official capacity. Acts 1905, p. 159, sec. 1; Acts 1913, p. 336, sec. 3; Acts 1919, Ch. 163, Sec. 2; Titus v. Kimbro, 8 Texas, 215.

If the reclassification by the Board of Appraisers and the Land Commissioner was not conclusive against the State as between the State and Rawlins in a direct proceeding to set the reclassification aside, it was not subject to collateral attack by the State or its agent, the Land Commissioner, which is the legal effect of the issuance of the permit to Charske. Harper v. Terrell, 96 Texas, 479; McPherson v. Camden Fire Ins. Co. 22 S. W., 211; Greene v. Robison, 210 S. W., 502; Fitzgerald v. Robison, 220 S. W., 769; Todd v. Miller, 26 Texas, 242, 3; H. & T. C. R. R. Co. v. McGehee, 49 Texas, 489; Hanrick v. Cavanaugh, 60 Texas, 24.

The State of Texas is estopped to deny that the land was properly reclassified as against the relator because the relator is an innocent purchaser of said land as grazing land from Rawlins, for value with-out notice of any claim that the land should have been classified otherwise. Harper v. Terrell, 96 Texas, 479; Greene v. Robison, 210 S. W., 498; Schendell v. Rogan, 94 Texas, 590; Jumbo Cattle Co. v. Bacon & Graves, 79 Texas, 13; Todd v. Miller, 26 Texas, 242, 3; Hanrick v. Cavanaugh, 60 Texas, 24; H. & T. C. R. R. Co. v. McGehee, 49 Texas, 489.

After the State has parted with title to public lands, unless minerals were known to exist thereon at the time of the sale, or unless minerals are expressly reserved in the act of sale, it cannot deny to the purchaser of the land an unconditional patent upon his complying with the terms of the sale, whatever the classification of the land before and at the time of the sale. Acts 1907, p. 490, Sec. 6; Greene v. Robison, 210 S. W., 498; Texas Co. v. Daugherty, 176 S. W., 717.

*C. M. Cureton*, Attorney-General, and *E. F. Smith*, Assistant, for respondent Robison.—The Act of 1913 did not authorize the Land Board to classify or reclassify lands subject to the provisions of that Act, for the following reasons: (a) The body of the Act itself does not grant to the Land Board authority to classify or reclassify the lands made subject to the provisions of the Act. (b) The caption or title of the Act limits the authority of the Commission or Board created by the provisions of this Act to revaluing or reappraising the land. (c) The Legislature, in the Act of 1913, proposed to permit individuals who had purchased land from the State after January 1, 1907, and prior to January 1, 1913, and who had failed to pay the interest and whose rights had been forfeited, to have a preference right to repurchase the land previously forfeited. It was not necessary for the Board to reclassify land in order to carry out the true purpose and intent of the Legislature. In the absence of express language to the contrary, the presumption is that the Legislature did not intend to authorize the Land Board to perform functions not necessary to the carrying out of the true purpose and intent of the Legislature.

Under the law in effect at the time this Act was enacted, land was placed by classification in one of four classes, viz., mineral, grazing, timber and agriculture. The minimum price for agricultural land was $1.50; for grazing land, $1.00 (Art. 5407, Vernon's Sayles' Civil Statutes, 1914); for timber land not less than the price fixed by the Land Commissioner (Art. 5429, et seq., Vernon's Sayles' Civil Statutes, 1914), and the timber was to be sold from the land at a price not less than that fixed by the Land Commissioner (Art. 5430). Mineral land could be sold for agricultural or grazing purposes, but the sale to be upon the express condition that the minerals were reserved to the State (Art. 5433).

It will be remembered that the Land Commissioner, since the Land Act of 1897, has had the power and authority to classify and reclassify the State's land. Section 2, Chapter 129, Acts Twenty-fifth Legislature. (10 Gammel's Laws of Texas, 1238.)

By the omission of the word "classification" from the caption, the Act is limited to the subject of valuations or revaluations. San Antonio v. Gould, 34 Texas, 74; Adams v. Water Company, 86 Texas, 485; I. & G. N. Ry. Co. v. Railroad Commission, 99 Texas,

335; M., K. & T. Ry. Co. v. State, 102 Texas, 153; Roddy v. State, 16 Cr. App., 502.

It is legitimate in the construction of a law to refer to the caption for explanation, and it is equally permissible in the construction of the caption to refer to the body of the Act. City of Austin v. McCall, 95 Texas, 575; Commonwealth v. Barney, 24 Ky. L. 235; 2 Sutherland, Stat. Const., 651.

The Land Board, as such, was vested with certain authority, the individual members as such had no power or authority to carry out the purposes of the Act or to do anything in connection therewith. The unit was the Board. 29th Cyc., 1433; 11th Cyc., 391; Mechem on Public Officers, Sections 572, 577; 23 American and English Ency. of Law, 366-368; Martin v. Lemon, 26 Conn., 192; Honaker v. Board of Education, 32 L. R. A., 413; Conger v. Board of Commissioners, 48 Pac., 1064.

As a member of the board, he was not acting in his official capacity as Land Commissioner. Any action that he may have taken, or anything that he may have done in his official capacity as a member of such board, could not and would not be binding on the State of Texas as an act of its Land Commissioner. 15 Corpus Juris, 460, Sections 107-108; Dillon on Municipal Corporations, Vol. 2, Sec. 501; Ball v. Presidio County, 88 Texas, 60; Rankin v. Noel, 185 S. W., 883; Pike County v. Spencer, 192 Federal, 11; Newcombe v. Cheesebrough, 33 Michigan, 322; Petrie v. Doe, 30 Miss., 698; Eigeman v. Board of Commissioners, 82 Ind., 413; Buell v. Cook, 4 Conn., 238.

After the foregoing had been written and was in print, we received the advance sheet of the Southwestern Reporter, of date March 23, 1921, and on page 698, found the case of Johnson v. Sunshine Oil Corporation, reported (227 S. W., 698.) This is directly in point.

MR. CHIEF JUSTICE BROOKS delivered the opinion of the court.

The relator, Robert G. Johnson, applies to this Court for a mandamus to compel the Respondent, J. T. Robison, Commissioner of the General Land Office, to issue him an unconditional patent to the N. W. ¼ of Section 6, in Block No. 53, Township No. 4, T. & P. Railway Company Survey, in Reeves County, and to cancel an oil and gas permit issued to C. J. Charske on February 12, 1919, on this land. Charske and those claiming under him have been made parties to the suit.

The record shows that the tract of land in question was classified as mineral land in 1901 and sold to S. J. Bond in August, 1907. Later it was transferred by Bond to W. B. Boles, and in September, 1910, by Boles to H. L. Rawlins. In July, 1913, after the passage of the Act of April 18, 1913, (Chapter 160, page 336, Acts of the 33rd Legislature), Rawlins permitted the land to become forfeited

for nonpayment of interest. The Commissioner of the Land Office forwarded a list of the forfeited lands, as required by Section 2 of said Act, to the County Clerk of Reeves County, and Rawlins notified the Commissioner of his desire to repurchase. In October, 1913, the Board of Appraisers, provided for by said Act, classified said land as dry grazing land, valued it at $2.00 per acre, and prepared triplicate notices of the appraisement and classification, sending one to Rawlins, one to the Commissioner of the General Land Office, and retaining one. The Commissioner entered the classification "dry grazing" in the proper classification books in the General Land Office thus causing the proper record of the Land Office to show said land classified as grazing. On January 19, 1914, and within the time provided in said Act, Rawlins filed with the Land Commissioner his application to repurchase said land, and described it as having been classified as grazing land and valued at $2.00 per acre. Among other endorsement put on this application by the Land Office were, "Class Graz', "Appr'm't $2.00". On March 20th, the Commissioner awarded the land to Rawlins on said application, and he executed his obligation therefor, as required by said Act, and Relator has tendered to the Land Commissioner the full amount due thereunder and demanded the issuance of an unconditional patent, which has been refused; but the Commissioner offers to issue to the Relator a conditional patent, reserving the mineral rights to the State.

The facts above stated are undisputed, but the Respondent contends that Relator is not entitled to an unconditional patent because the Board of Appraisers provided for in said Act had no power to classify said land, and alleges that it has never been reclassified by the Land Commissioner since the mineral classification of 1901.

The relator contends: (1) That the Board of Appraisers provided for in said Act had power to classify said land; (2) that, even if the Board did not have such power, the acts of the Commissioner of the Land Office, in connection therewith, constituted a classification by him; and (3) that the State is estopped from denying such classification because the Relator is an innocent purchaser of said land as grazing land from Rawlins for value, without notice of any claim that the land should have been classified otherwise.

While the Act contemplated the forfeiture for nonpayment of interest, under the conditions applying to Rawlins' land, it is equally clear that the forfeiture was to be had with the provisions attached giving Rawlins the right to repurchase on complying with the conditions named therein. The forfeiture did not give the Land Commissioner the right to put the land back on the market, as in ordinary cases, until after the time provided in this special Act within which Rawlins was given the right to repurchase. During that time, no other person could purchase it. The preliminaries precedent to the right of repurchase were different from those that would have been

required under the general law, and the only persons having the right to repurchase under the Act were the *owners at the time of the forfeiture.* The board of Appraisers provided for by the Act dealt only with such owners, and if they failed to repurchase within the time provided therein, the Commissioner of the General Land Office was required by Section 4 to "again place the land on the market for sale, as is now provided by law." In that event the matter would have had to be handled entirely by the Land Commissioner, the Board of Appraisers would have had no connection therewith, and the special provisions of this Act would have had no reference thereto. Under the Act in question the Land Commissioner did not have the power, when Rawlins' lands were forfeited, to give the notices to the County Clerk, required in ordinary cases for replacing the land on the market, until after the time therein provided for had expired, but was required to send a list of the land so forfeited to the County Clerk, which was done. It is apparent that this list was not intended for the benefit of the general public, or as a notice to bidders, but only for the owners of such lands at the time of the forfeiture, as they were given thirty days after the receipt of same by the clerk within which to notify the Commissioner of their desire to repurchase; and the Act made it the duty of the Commissioner, as soon as practicable after the receipt of such advice, to furnish the Board of Appraisers provided for therein a complete list of such forfeited lands, together with the names and postoffice addresses of those who had notified him of their desire to repurchase. In connection with this, he was also required to furnish the Board "such other information as he may have in his possession as will enable said Board to properly appraise said lands."

It is contended by the Respondent that the power given the Board to "appraise" or "value" such lands did not include the power to "classify." In view of the use that has been made of the words "appraisement," "value," and "classification" in our statutes with reference to this subject, it would seem that "valuation" could not be held to include "classification;" and if, when the matter of reselling the land to Rawlins was up, the Land Commissioner had insisted on a different classification from that fixed by the Board, and had asserted his right to classify it, and refused to make the award on the classification fixed by the Board, it is clear that he would have had the authority so to do. The Act did not authorize the Board to classify.

But does it follow from this that the Relator is not entitled to the relief sought? We think not. Classification of lands may be made without valuation, but we do not see how valuation can be legally made until the classification is known. It was made the duty of the Commissioner by this Act to furnish the Board with any information he had in his possession that would enable them to properly ap-

praise said lands. It was necessary for the Board to know the classification of the lands; not only in order to properly value it, but because it was limited by the General Law to the minimum values fixed on different classifications. Therefore, in order to revalue this land, the Board had to either (1) accept the former classification that had been made by the Land Commissioner, or (2) receive a new classification made by him after the entry of the forfeiture, or (3) classify the land itself. If the Act did not give the Board power to classify these lands in the particular cases referred to it for valuation, then that power remained in the Land Commissioner, unless it was the intention of the Legislature that the old classification should stand and that revaluation must be made without changing that classification. That the Legislature had no such intention is apparent, because the very first section fixes the time within which the owner may repurchase at ninety days "after notice of *classification* and appraisement of his land." Clearly the Act contemplated that after the forfeiture was entered, the Land Commissioner or the Board, the one or the other, would have the power to reclassify, even if such reclassification was not a necessary prerequisite. Conceding that the Board did not have the power to classify, nevertheless the Act not only authorized but made it the duty of the Board to send to the defaulting owner, Rawlins, a notice of "the appraisement and classification," as a basis for his repurchase and by which his application to repurchase was to be governed. The time allowed him within which to file his application to repurchase dated from the notice of this classification and appraisement, and the amount of his obligation was governed by it. The question then arises as to whether or not Rawlins had the right to rely on the notice of classification sent him by the Board of Appraisers and the award made to him by the Commissioner of the General Land Office, regardless of whether the Board had power to make such classification or not. If the Board did not have the power, certainly the Commissioner did have, and it was his duty, under the Act, to notify the Board of the proper classification, because this was information in his possession and necessary for it to have in order to properly appraise the land. Furthermore, we think that it was his duty, if he did not think that the classification made by the Board was correct, to have declined to make the award on it and to have then asserted his right to classify. (Corrigan v. Fitzimmons, 97 Texas, 598.) He knew, not only as a member of the Board, but as the Commissioner of the General Land Office, the classification that was sent to Rawlins, and on which he based his application for repurchase, because a copy of the notice of such classification was filed with him as Commissioner. Was it the duty of Rawlins, on the receipt of the notice of this classification and appraisement, to make further inquiry as to whether the classification had been made by the Board or the Commissioners? Such reclassification was not required

to be filed with the County Clerk, as in ordinary cases, because the land was not being again put on the market, and the right to repurchase was specially reserved to the defaulting owner. He was therefore not required to examine the records in the County Clerk's office. If he was required to examine the classification records in the Land Office, he would have found, on such examination, an entry classifying it as grazing, under date of October 21, 1913; and there was nothing in this entry to show that the classification had not been made by the Commissioner. Was it then his duty to make particular inquiry, either in person or by letter, of the Commissioner or the Board as to which one of them had made the classification? If the Act charged him with notice that the Board did not have the power to classify, then he had a right to assume that it had secured the classification from the Land Commissioner, who did have that power, and we believe he had the right to rely on the classification which the Board sent him, and which the Act not only authorized but made it its duty to send him. But even if he was not authorized to rely on the notice sent him by the Board, he was further advised that the Land Commissioner, in his official capacity as such, and acting independent of the Board, had entered the classification "graz" on the back of his application and awarded him the land on said application, which was based on the classification that had been sent him and which described the land as having been classified as grazing. The Commissioner, who had the power to classify, and whose duty it was to see that a proper classification was made before the award, accepted his obligation and awarded him the land. The prerequisites necessary for the repurchase of this tract were prescribed by the Act itself, and all of them have been fully complied with, and we think that the Relator is entitled to an unconditional patent. This does not contravene the holdings of this Court to the effect that an award is void where the Commissioner attempts to exercise powers not given him by the Statute, or where certain prerequisites required by the statute, such as the record of valuation or classification, had not been complied with; because in the case at bar the Commissioner had the power to classify, and it was his duty to see that the land was properly classified before he awarded it, and in this particular case he was not required to file notice of the classification with the County Clerk. Nor does it involve a holding that the acts of the Commissioner as a member of the Board bound him as Land Commissioner; but the ruling is based on his acts as Commissioner and on the fact that Rawlins had the right to assume from the notice sent him that a proper classification had been made by the Commissioner.

To hold that the State is not bound by this award would unsettle a great number of titles awarded under this Act, and would result in a very clear injustice against a number of purchasers who acted thereunder.

The Act appears to have been passed for the relief of purchasers who had suffered "several consecutive years of drought," but it seems to us that to hold that Rawlins was not entitled to rely on the classification furnished him, and on which he based his application, and on the acts of the Land Commissioner, would be to convert this special law into a trap for the unwary instead of a benefit to the unfortunate.

Rawlins' application to repurchase contained this clause:

"For the purpose of buying said land, I hereby represent that I am buying for agricultural and grazing purposes only, and if it is classified as mineral lands, the sale to me is upon the express condition that the minerals therein shall be, and are reserved to the fund to which the land belongs, to all of which I agree."

It is contended that the effect of this clause was to retain the minerals in the State, but the contention is untenable. The application was made on a prescribed form, and would have contained this clause whether it was for purchase of agricultural, grazing or mineral lands. The applicant had been informed, by the notice which the special Act, under which he was repurchasing, authorized and directed the Board to send him, that the land he was seeking to repurchase had been classified as grazing land, and the application also so stated. The clause relied on does not state that the minerals are to be reserved, regardless of whether the land was classified as agricultural, grazing, or mineral lands, but only "if it is classified as mineral lands." It was only in that event that such a condition was to be applicable and become effective. As the land Rawlins was seeking to repurchase had been classified as grazing land, he had a right to assume that this clause in the form of application provided by law and furnished him did not apply to his purchase, as this land was not classified as mineral land.

The mandamus will issue as prayed for.