[Civil No. 2153.   Filed November 21, 1923.]

[220 Pac. 417.]

# THOMAS E. CAMPBELL, ERNEST R. HALL, W. J. GALBRAITH, C. W. FAIRFIELD and RAYMOND EARHART, Constituting the State Land Department of the State of Arizona, and RUDOLPH KUCHLER, State Land Commissioner, Appellants, v. FLYING V CATTLE COMPANY, a Corporation, Appellee.

1. MINES AND MINERALS—STATE LAND DEPARTMENT NOT EMPOWERED TO RESERVE MINERALS IN CERTIFICATE OF PURCHASE ON SALE OF NON-MINERAL LAND.—Under the Public Land Code, sections 45, 46, providing for the sale of all state lands not known to contain minerals or to adjoin mineral lands, and in view of sections 34, 38, the state land department, after a sale of such land has been consummated by it in the usual course and without qualification of any character, cannot insert in the certificate of purchase, issued under section 62, a provision reserving minerals, to the state notwithstanding section 3, authorizing the department to make rules and regulations relating to the sale of such lands.

2. PUBLIC LANDS—STATE HOLDS LAND GRANTED BY FEDERAL GOVERNMENT SAME AS OTHER PATENTEE.—Land granted to the state by the federal government under the Enabling Act is held by the state the same as any other patentee.

3. PUBLIC LANDS—METHOD ADOPTED BY LEGISLATURE FOR DISPOSAL OF LANDS GRANTED BY FEDERAL GOVERNMENT FINAL.—The method adopted by the state legislature for disposition of lands granted to the state by the federal government under the Enabling Act is final, unless in violation of the Constitution or contrary to the terms of the grant.

4. MINES AND MINERALS—PURCHASER NOT ESTOPPED TO DENY RIGHT TO INCLUDE IN CERTIFICATE OF PURCHASE RESERVATION OF MINERALS TO STATE.—Purchaser of state land with knowledge, at the time when its application was filed and its bid accepted, that certificates of purchase issued under Public Land Code, section 62, customarily contained provision reserving minerals to the state, was not by reason of such knowledge estopped to deny right to include such reservation.

5. MINES AND MINERALS—LAND HELD SUBJECT TO SALE AS NONMINERAL LAND WITHIN PUBLIC LAND CODE.—Under Public Land Code, sections 45, 46, providing for the sale by the state of land not known

25 Ariz.—37

to contain valuable minerals or to be adjacent to mineral land, and Enabling Act, sections 24, 29, providing for the granting by the federal government of nonmineral land to the state, land granted to the state as nonmineral land, and classified by appraisers appointed on application for the purchase thereof as grazing land and advertised for sale as such, was nonmineral land and could be sold as such, even though minerals, petroleum or gas might be found on it later.

6. MINES AND MINERALS—LAND DEPARTMENT'S DETERMINATION AS TO WHETHER LAND IS MINERAL OR NONMINERAL FINAL.—Land department's determination as to whether land is mineral or nonmineral under Public Land Code, §§ 45, 46, providing for the sale by the state of the nonmineral land, is final as to its character as mineral or nonmineral land.

7. MANDAMUS—LAND COMMISSIONER CAN BE REQUIRED BY MANDAMUS TO ISSUE CERTIFICATE OF PURCHASE TO PURCHASER ENTITLED THERETO.—Under Revised Statutes of 1913, paragraph 1553, land commissioner could be required by *mandamus* to issue certificate of purchase without reservation of minerals to purchaser of school land, entitled thereto under Public Land Code, section 62, on his refusal to so do.

APPEAL from a Judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. John W. Murphy, Attorney General, Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for Appellants.

Mr. D. B. Morgan and Messrs. Boyle & Pickett, for Appellee.

McALISTER, C. J.—This is an appeal by Thomas E. Campbell, Ernest R. Hall, W. J. Galbraith, C. W. Fairfield and Raymond Earhart, constituting the state land department of the state of Arizona, and

6. Conclusiveness of decisions or findings of the land department as to whether land is mineral or nonmineral, see notes in Ann. Cas. 1912A, 302; L. R. A. 1918D, 627.

On the question relating to mining claims as a federal question, see note in 62 L. R. A. 534.

See 26 Cyc. 243; 32 Cyc. 934, 935, 1098.

Rudolph Kuchler, state land commissioner, from a judgment of the superior court of Maricopa county directing them to execute and deliver to the Flying V Cattle Company, a corporation, appellee, a certificate of purchase for certain land bought by it and to exclude therefrom a provision reserving to the state "all valuable metals, mineral, petroleum, or natural gas" which said land contains.

The facts giving rise to the action are these: On December 16, 1920, the Flying V Cattle Company filed with the state land department an application to purchase section 8, township 15 north, range 21 east, of the Gila and Salt River base and meridian, which land is situated in Navajo county and was selected by the state of Arizona in March, 1916, under the provisions of the Enabling Act and approved to the state in July, 1917. The application was, by order of the land commissioner and in accordance with the rules and regulations of the land department, approved, after which the land was properly advertised for sale at public auction, and on March 22, 1922, pursuant to said advertisement, sold to appellee, the highest and best bidder therefor. Immediately following the purchase, appellee paid the state land department, upon demand of the state land commissioner, the sum of $377.70, $128 of which represented the initial payment of the purchase price, and the remaining $247.70 the classification and appraisement fee. Thereupon the state land department tendered to appellee for its signature a certificate of purchase of said land dated March 22, 1922, and containing, among other things, a reservation and condition that "all valuable metals, minerals, petroleum, or natural gas are expressly reserved to the state of Arizona and are exempted from the sale herein made and provided therefor." Under date of June 21, 1922, appellee notified the state land commissioner by letter that it would not

accept a certificate of purchase containing this reservation, and the following day the state land commissioner replied that the land department had decided that such reservation should remain a part of the certificate of purchase and would not be eliminated therefrom.

Subsequent thereto appellee filed in the superior court a petition alleging, in addition to the foregoing, that the land in question was not at the time of its sale, nor had been since, mineral in character and known to contain valuable metals, mineral, petroleum or natural gas in paying quantities, nor has it at any of said times adjoined lands upon which are producing mines, oil wells or gas wells, or which are known to contain metals, mineral, petroleum or natural gas in paying quantities; that at all times herein mentioned it has been ready and willing to pay and tender to the state land department any sums due upon the said land and to accept a certificate of purchase of said land free from the said mineral reservation and condition above set out; that the refusal of the state land department and the state land commissioner to execute and deliver such a certificate of purchase violates and contravenes section 62 of the Public Land Code; that it has no plain, speedy or adequate remedy at law. The prayer of this petition that an alternative writ of *mandamus* issue directing appellants to approve the sale of the land in question, make, execute and deliver to appellee a certificate of purchase for the same, and to omit therefrom such mineral reservation and condition, or show cause why it had not done so, was granted.

Appellants answered, admitting that the land, which, it stated, was not nonmineral in character, but known to contain prospectively valuable metals, minerals, petroleum or natural gas in paying quantities, had been appraised, but denying that the

prospective mineral values thereof had, and alleged affirmatively that said mineral values had not been appraised or considered for the reason that since the creation of the state land department its established policy has been, and still is, to reserve all minerals in the lands of the state from sale. The answer admits further that the land was offered for sale, but denies that the minerals thereof were, and alleges also that the petitioner, its officers, agents and attorneys knew when its application was filed, the appraisement made, the land advertised, and the sale had, that it was the policy and practice of the state land department to reserve all mineral rights in and to the lands of the state of Arizona; and that the certificate of purchase and the deed subsequently to be given appellee would contain such a reservation.

It is apparent from this statement that the question presented by the record is whether the state land department may, after a sale of state land has been consummated by it in the usual course and without qualification of any character, insert in the certificate of purchase issued to the purchaser thereof a provision reserving to the state all the valuable minerals, metals, petroleum and natural gas in the land thus sold. It has been the practice of this department since the enactment of the Public Land Code in 1915 to insert such reservations, but appellee contends that the right or power to do this is not conferred by the Land Code, and therefore that acceptance of its bid for the land (the sale of which at public auction was properly advertised and regularly made in all respects), and of the initial payment of the purchase price therefor, resulted in a binding contract of sale of the estate in fee and under the provisions of section 62 of the Land Code entitled it to a certificate showing this

fact. The correctness of these respective contentions depends wholly upon the provisions of the Public Land Code, for, if they reserve to the state the mineral rights in all lands sold by the state, appellants' contention must be upheld; otherwise, not.

The lands owned or held in trust by the state were granted by the federal government under the provisions of the Enabling Act, and the state holds them the same as any other patentee. 32 Cyc. 934; *Godwin* v. *Davis,* 74 Miss. 742, 21 South. 764; *Doll* v. *Meador,* 16 Cal. 295; *Van Wyck* v. *Knevals,* 106 U. S. 360, 27 L. Ed. 201, 1 Sup. Ct. Rep. 336 (see, also, Rose's U. S. Notes). After title to them had vested in the state, it became exclusively the province of the state legislature to provide a method for disposing of them which would further the objects for which the various grants were made, and its action in this respect, unless in violation of some constitutional provision or clearly contrary to the terms of the grant, is final. 32 Cyc. 935. The legislature did this in 1915 by enacting the Public Land Code, in which the state land department was created and complete authority to administer these lands conferred upon it. Chapter 5, Sess. Laws of Second Special Session, Second Legislature. Section 3 of the act authorizes the land department to sell and lease state lands in accordance with the provisions of the act "hereinafter provided," and section 45 states what lands are subject to sale, and 46 those that are not. These sections read:

"Sec. 3. *Duties and Powers of Department.* The department is hereby authorized to sell and lease all lands owned or held in trust by the state, under such provisions as are hereinafter provided, and under such other rules and regulations, not in conflict with the provisions of this act, as the department may direct; to hold semi-monthly meetings, at which time all disputes, grievances and other matters pertaining to the administration of state lands may be heard by

said department; and to perform all of the duties
heretofore imposed by law upon the state land com-
mission.

"Sec. 45. *Lands Subject to Sale.* All state lands,
except land granted for the purpose of building and
maintaining a state hospital for disabled miners, and
as otherwise provided for in this act, including all
improvements made or placed thereon, or connected
therewith, shall be subject to appraisement and sale
as in this act provided. Any person over 18 years of
age, who is a citizen of the United States, or has
declared his intention to become such, is entitled to
purchase any of the lands of the state.

"Sec. 46. *Mineral Lands not to be Sold.* State
lands known to contain valuable metals, minerals,
petroleum or natural gas, in paying quantities, and
state lands adjoining private lands upon which there
are producing mines, oil wells or gas wells, or which
are known to contain valuable minerals, petroleum
or natural gas in paying quantities, shall not be
sold."

It is clear from the last two paragraphs that all
nonmineral lands, with certain exceptions, are sub-
ject to sale and that mineral lands are not. But, be-
cause lands coming within the latter classification
cannot be sold and it is not always possible to know
definitely at the time some lands are offered for sale
whether they properly belong to this class, the land
department adopted soon after its creation the prac-
tice of inserting in all certificates of purchase and
deeds issued by it a provision reserving to the state
the minerals such lands contain. This was done for
the evident purpose of rendering it impossible that
the state might by mistake part with its mineral
lands in selling those classified and thought to be only
grazing or agricultural.

The Land Code, however, specifically provides for
no halfway ground—that is, it does not expressly
authorize the sale of lands subject to sale and at the
same time reserve to the state the minerals in such
lands—neither does it contain a provision from which

such a right may be inferred or implied; but, upon
the contrary, every section of it bearing upon the
question points to the conclusion that such a reserva-
tion was not intended. Section 45, which confers
upon the land department power to sell nonmineral
lands, and section 46, which withholds the power to
dispose of mineral lands, indicate that in both sec-
tions the term "lands" refers to the same estate;
that is, the fee, the title the state has. This must
remain in the state so far as its mineral lands are
concerned, but must be parted with when its nonmin-
eral lands are sold, because the word "land," when
used in its broad sense, as in this instance, "includes,"
according to the court in *Louisville & N. R. Co.* v.
*Boykin*, 76 Ala. 560, "not only the surface of the
earth, but the mines, quarries, and everything under
it, and whoever has the fee in the surface presump-
tively owns everything of a permanent nature, under
or over it." In *Smith* v. *City of Atlanta*, 92 Ga. 119,
17 S. E. 981, the court said:

"Land has . . . 'an indefinite extent, upwards as
well as downwards; . . . whatever is in a direct line
between the surface of any land and the center of
the earth belongs to the owner of the surface. . . .
So that the word "land" includes, not only the face
of the earth, but everything under it, or over it.'
2 Blackstone's Com., c. 2, pp. 18, 19."

This conclusion is strengthened by the fact that
section 62, which prescribes what a certificate of pur-
chase issued to one who has complied with all the
requirements of the act shall contain, makes no ref-
erence whatever to mineral reservations, and a com-
parison of this section with section 34, which pre-
scribes what a lease of grazing or agricultural lands
shall contain, makes it stronger. The latter provides
that each lease of such lands shall reserve to the
state, not only the minerals in or upon them, but
also the right to go upon such lands for the purpose

of extracting or prospecting for its minerals, a policy wholly different from that disclosed by the provisions governing the sale of lands. The state's mineral lands, it is true, may be leased; but, under section 38, this only applies to its *unsold* lands upon which valuable minerals are found, which shows that lands which have been sold are excepted from those that may be leased, though such would not be the case if the law authorizing their sale had reserved to the state the valuable minerals found thereon. Under such a condition the state, after having sold a tract of land, could lease its minerals, together with the right to go upon it and extract them, to one other than the purchaser, and thus interfere to this extent with the ownership of the latter, but it is clear that such a right could not exist except by express provision of the statute. A reservation in the vendor of a part of the estate would be so contrary to the meaning ordinarily conveyed when the sale of lands is spoken of that it must be assumed the legislature, in providing that certain state lands are subject to sale, used the words "lands" and "sale" in their commonly accepted sense, and that if it had intended they should have a different meaning—that is, have authorized the sale of less than the fee—it would have said so in clear and unmistakable language.

Appellants contend, however, that in addition to the policy disclosed by sections 46 and 34—the one prohibiting the sale of mineral lands and the other compelling the insertion in all leases of state lands a clause expressly excepting and reserving to the state the oils, minerals, etc., such lands contain—section 3 of the act provides that the land department shall establish rules and regulations for its conduct not in conflict with the provisions of the act itself and that the first two sections disclose an intention on the part of the legislature not to dispose of the minerals in any of its lands. In so far as section 3 deals with

the matter of selling lands, it is clear that it merely empowers the department to sell those which subsequent sections of the act say are subject to sale, and no rule or regulation of the department relative to this phase of the question can legally permit the sale of an estate in lands different from that which these sections provide may be sold. Hence, the power to adopt such rules and regulations does not authorize the adoption of the policy of selling less than the term "lands" implies.

Inasmuch, then, as the Land Code does not provide that the state shall, or even may, retain the minerals in the land it sells, authority to insert such a provision in a certificate of purchase issued by the land department does not exist. Those officers upon whom the duty of administering the land law devolves are themselves creatures of the law, and have no powers except those conferred upon them by the law itself. *Cunningham* v. *Ashley*, 55 U. S. (14 How.) 377, 14 L. Ed. 462 (see, also, Rose's U. S. Notes); *Baty* v. *Sale*, 43 Ill. 351, 92 Am. Dec. 128; *Parker* v. *Duff*, 47 Cal. 554. It is true, as contended by appellants, that the state, the same as an individual, may, in selling its land, make such reservations, exceptions or additions as it desires concerning them, but the only body with the power or authority to say what these may be is the legislature and until it has said that minerals in or upon the land sold by the state shall be reserved the insertion of such a reservation in any muniment of title issued by the land department is wholly without warrant, and therefore void. *Deffeback* v. *Hawke* 115 U. S. 392, 29 L. Ed. 423, 6 Sup. Ct. Rep. 95 (see, also, Rose's U. S. Notes'; *Davis* v. *Weibbold*, 139 U. S. 507, 35 L. Ed. 238, 11 Sup. Ct. Rep. 628; *Burke* v. *S. P. R. R. Co.*, 234 U. S. 669, 58 L. Ed. 1527, 34 Sup. Ct. Rep. 907; *Courtright* v. *Wisconsin Cent. R. R. Co.*, 19 Land Dec. 410; *Johnson* v. *Robison*, 111 Tex. 438, 240 S. W. 300; *Walpole*

v. *State Board,* 62 Colo. 554, 163 Pac. 848; *Cronk* v. *Shoup,* 70 Colo. 71, 197 Pac. 756; *Silver Bow Mining & Milling Co.* v. *Clark,* 5 Mont. 378, 5 Pac. 570. In discussing this question, the Supreme Court of Colorado, in *Walpole* v. *State Board, supra,* used the following very appropriate language:

"We conclude, therefore, that where state lands are sold, the board has no authority to sell less than the whole, and until authority is given it to sell less, like surface rights, or other partial interest, it may not do so. The constitutional provision which establishes the land board also places its control and regulation with the legislative department of government, and the board can act only within the limits and in the manner prescribed by that body. As the law does not invest the land board with authority to make any reservation when it sells state lands, the one attempted in the contract here involved is a nullity, and without effect for any purpose."

Appellants contend further that appellee knew, when its application was filed and its bid accepted, that the certificate of purchase to be issued to it would contain the reservation to which it is now objecting and that in consequence of this fact it is now estopped from denying the validity of such reservation. It may be true that appellee had such knowledge, though it is wholly immaterial whether it did or not, since the law did not authorize the inclusion of such a provision in the certificate; but, even though it did know such to be the practice, it would necessarily be assumed that appellee knew the law also, that it acted upon the theory that the law would be followed, and therefore that a certificate of purchase containing what section 62 requires, and nothing more, would be tendered. Such is the effect of the case of *Burke* v. *S. P. R. R. Co., supra,* in which the Supreme Court of the United States held void a mineral exception in a patent issued to a railroad company, notwithstanding it was expressly

agreed by the patentee that such a provision should be effective as one of the terms of the patent. The court used this language:

"Lastly, it is urged that the railroad company accepted the patent with the mineral land exception therein and also expressly agreed that the latter should be effective as one of the terms of the patent, and so is bound by it or at least estopped to deny its validity. There are insuperable objections to this contention. The terms of the patent whereby the government transfers its title to public land are not open to negotiation or agreement. The patentee has no voice in the matter. It in nowise depends upon his consent or will. We must abide the action of those whose duty and responsibility are fixed by law. Neither can the land officers enter into any agreement upon the subject. They are not principals but agents of the law, and must heed only its will. . . . If the mineral exception clause was inserted in the patent with the consent of the defendant, Southern Pacific Railroad Company, and under an understanding and agreement between it and the officers of the Interior Department that said clause should be effective to keep in the United States title to such of the lands described in the patent as were in fact mineral, are the defendants, Southern Pacific Railroad Company and the Kern Trading . . . Company, estopped to deny the validity of said clause?

"Answer—No; such an agreement is of no greater force as an estoppel than the exception in the patent. The latter being void, the patent passes the title and is not open to collateral attack or to attack by strangers whose only claim was initiated after the issue of the patent."

And in *Walpole* v. *State Board, supra,* the Supreme Court of Colorado, in discussing a certificate of purchase issued under statutory provisions virtually the same as Arizona's and containing a provision reserving to the state the minerals in the land sold, said:

"The testimony shows that when plaintiff bought the land he was aware that the mineral reservation

was to be incorporated in his certificate of purchase, that he continued to pay the annual installments of the purchase price after he knew that the board had granted a mining lease covering his quarter-section, and that he himself at one time applied for a similar lease when the first one was canceled. Defendant, therefore, invokes the doctrine of estoppel. But, as the board lacked the legal capacity to create the easement, it is void (9 R. C. L. 747), and, being void, cannot form the basis of an estoppel (16 Cyc. 721). Undoubtedly the plaintiff was mistaken as to his legal rights, but such mistake cannot estop him from asserting them when known. 16 Cyc. 734. An admission as to the legal effect of a contract, or an admission as to the law, does not act as an estoppel. 16 Cyc. 757.''

Appellants urge also that the evidence fails to show that the land is nonmineral in character, but upon the contrary that it does show that it is prospectively valuable for minerals, petroleum and gas. The land was selected by the state of Arizona pursuant to the terms of the Enabling Act, and was classified and thought at that time to be nonmineral, for only such lands were granted to the state. Sections 24 and 29, Enabling Act. The appraisers, appointed after appellee's application to purchase had been filed, classified it as grazing land, valuable for range purposes and the water developed upon it and as such it was advertised for sale and sold. One of the appraisers, a mining engineer, testified that he found no evidence of the existence of any minerals of any kind on the land, and there is no testimony showing that at the time of the sale it or any land adjoining it contained or was known to contain oil, gas or minerals of any character. Appellants contend, however, that under the evidence it has prospective mineral values; the claim being based perhaps upon the fact that within the last few years several wells have been bored for oil in that section of the state and that at the time of the trial of this case below one was being sunk.

within six miles of it. But whether it contains oil prospectively is immaterial, because section 46 says that state lands *known* to contain valuable metals, etc., shall not be sold, and the record is entirely bare of any testimony showing that anyone possessed such knowledge at the time of sale. If, previous to that time, it had been classified by the proper officers as nonmineral, and the land department, when it was sold, had no knowledge to the contrary, it was, within the purview of the Land Code, nonmineral land, and. therefore subject to sale, regardless of the fact that mineral, oil or gas in paying quantities might later be found upon it. It is not the fact that the land contains minerals, but the fact that such knowledge existed at the time of sale, that governs. *Shaw* v. *Kellogg,* 170 U. S. 312, 42 L. Ed. 1050, 18 Sup. Ct. Rep. 632 (see, also, Rose's U. S. Notes); *Colorado C. & I. Co.* v. *United States,* 123 U. S. 307, 31 L. Ed. 182, 8 Sup. Ct. Rep. 131; *Johnson* v. *Robison, supra; Deffeback* v. *Hawke, supra.* In the case last cited the court said:

"We also say lands *known* at the time of their sale to be thus valuable, in order to avoid any possible conclusion against the validity of titles which may be issued for other kinds of land, in which, years afterwards, rich deposits of mineral may be discovered. It is quite possible that lands settled upon as suitable only for agricultural purposes, entered by the settler and patented by the government under the pre-emption laws, may be found, years after the patent has been issued, to contain valuable minerals. Indeed, this has often happened. We, therefore, use the term *'known* to be valuable at the time of sale,' to prevent any doubt being cast upon titles to lands afterwards found to be different in their mineral character from what was supposed when the entry of them was made and the. patent issued."

When, therefore, the land department, upon which devolves the duty of determining the character of

the state's land and of knowing at the time of the sale of any particular tract that it does not contain mineral in paying quantities, reaches a decision on the question, its conclusion is final, and a patent or other muniment of title based thereon and issued by it is indefeasible, unless it "be attacked by the state or an individual having a prior legal or equitable claim to the land and by no one else, and even the state can proceed for the annulment of its patents only where its own interests are concerned, and not for the sole purpose of protecting the interest of private individuals. In order to avoid a patent it must be annulled in a direct proceeding, in equity, for as a general rule a grant or patent from the state cannot be collaterally impeached, unless it is void on its face." 32 Cyc. 1095.

It is clear from the foregoing that it was the duty of the land commissioner to execute and deliver to appellee a certificate of purchase which properly evidenced the title it was to receive upon completion of the payment of the purchase price. The appraisement and classification fee and the initial payment of five per cent of the purchase price having been paid by appellee, there was nothing else it could do to bring itself within the provisions of section 62 of the Land Code, which provide that upon compliance by the purchaser with the requirements of that act "the commissioner shall make and deliver to such purchaser a certificate of purchase, containing the name of the purchaser, a description of the land purchased, the sum paid, the amount paid as the value of improvements, if any, the amount remaining due, the date when each of the deferred payments fall due, and the amount thereof, and the rate of interest thereon." Then follow several other requirements, but they make no reference to the inclusion of a provision reserving to the state the minerals in the land sold. The land commissioner's duty to make and deliver to the pur-

chaser a certificate of purchase containing what this section requires, and nothing more, results from his official position, and in case he refuses to perform it the writ of *mandamus* may be invoked to compel him to do so. Paragraph 1553, Rev. Stats. 1913.

Appellants' contention that before appellee can compel the issuance of a certificate in the form demanded it must show either a mandate of the statute or law, or a contractual relation between it and the state, requiring it, is undoubtedly correct, but it is difficult to conceive of a statute which could more plainly meet the contingency first mentioned than section 62 of the Land Code. It leaves the land commissioner no alternative other than to make and deliver to the purchaser a certificate drawn to comply with its requirements, and it is clear that these do not include a provision reserving to the state the minerals in the land which he certifies he has sold.

The judgment of the superior court is therefore affirmed.

ROSS and LYMAN, JJ., concur.