268 P.2d 326

**KENNEDY  v.  MORROW.**

No. 5596.

Supreme Court of Arizona.

March 22, 1954.

Dougherty, Chandler & Connor, Phoenix, for appellant.

John M. Schwartz, Tucson, for appellee.

UDALL, Justice.

Plaintiff-appellant Florence L. Kennedy brought this action to quiet her title to the whole of certain lands in Pinal County, Arizona. Defendant-appellee Marjorie Cummings Morrow formerly Marjorie Cummings, answered and counterclaimed to quiet her title to an undivided one-fourth interest in said lands, detailing the facts upon which she relied to establish her claim, and alleging fraud and deceit on the part of plaintiff. It was the judgment of the court that defendant was the owner of an undivided one-fourth of the real estate, her title thereto was quieted against plaintiff, and the latter was granted no relief whatever. It is from this judgment that an appeal is prosecuted. We shall hereafter refer to the parties by name, or as plaintiff and defendant.

The material facts which determine the disposition of this case upon appeal, stated in the light most favorable to sustaining the judgment, are actually quite simple. In the year 1947 Florence Kennedy and Doctor Roland Cummings, then husband of Marjorie Cummings Morrow, were the holders of Certificate of Purchase No. 6305(G) for state school lands in Pinal County, Arizona, viz.: Section 3, T. 4 S., R. 9 E., G&SRB& M. On the records of the state land department, Florence Kennedy and Roland

Cummings appeared as "joint tenants", (hence under the statute they were tenants in common, Section 71–122, A.C.A.1939) each holding an undivided one-half interest in the realty. It should be stated that the plaintiff was then, and for many years prior thereto had been, the secretary of Dr. Cummings and was thoroughly familiar with all of the matters herein recited.

Marjorie Cummings sued Roland Cummings for divorce, and the interlocutory judgment of the California court ordered Roland Cummings to execute a deed conveying to his wife a one-fourth interest in this Arizona realty. On October 20, 1947, such deed was executed and delivered, and on November 22, 1947, it was filed of record with the county recorder of Pinal County. With knowledge of the fact that Roland Cummings had, pursuant to the order of the California court, conveyed to his wife this one-fourth interest, Florence Kennedy procured from Roland Cummings an assignment of his interest in the certificate of purchase. Plaintiff Florence Kennedy, without disclosing the true facts, paid to the state land department the final payment due under the certificate of purchase, and presented the assignment made by Roland Cummings to her. On the face of the record before the state land commissioner it thus appeared she was the only person owning an interest in the certificate of purchase or in the realty, and since final payment had been made a patent regular in form for the tract described issued to her on January 7, 1948.

Trial was held March 1, 1950, before the court sitting without a jury. We here set forth plaintiff's case in chief, *in its entirety:*

"Mr. Robinette:  If the Court please, we move for the association of Mr. A. L. Abrahams, a member of the California bar, as counsel for the plaintiff in this action.

"The Court:  The record may so show.

"Mr. Robinette:  The plaintiff offers in evidence the original patent issued by the State of Arizona to Florence L. Kennedy, dated January 7, 1948, bearing the seal of the State of Arizona, covering the land herein involved.

"The Court:  If there is no objection it may be admitted. (Document referred to was admitted and marked Plaintiff's Exhibit No. 1)

"Mr. Robinette:  The plaintiff rests."

Defendant then introduced evidence on her counterclaim, revealing the facts herein set forth. There was a blanket and persistent objection by plaintiff that any evidence of events occurring before the issuance of the patent was incompetent, irrelevant, and immaterial to the issues in the case.

The trial court, on October 18, 1950, made very complete findings of fact and conclusions of law which have been of material aid in deciding this appeal. The court concluded in part:

"V.

"By virtue of her (defendant's) vested interest as a holder in community with her husband, and by the said deed from her husband to her under date of October 20th, 1947, the defendant owned an undivided one-fourth interest in said land at the time of the issuance of the patent on January 7th, 1948.

"VI

"A suit to quiet title is one of equitable cognizance, and where therein it is found that a patent has been erroneously issued through fraud, mistake, or wrong view of law to one person when another was legally entitled to it the court will go behind the patent and give effect to such equitable right. Thus, in the instant cause, it is clear that the right of the defendant as an equitable owner of an undivided one-fourth of said land is paramount and superior to the claim of the plaintiff to the whole under and by virtue of the patent, the plaintiff holds in name the patent *as trustee* for the defendant to the extent of an undivided one-fourth interest therein." (Emphasis supplied.)

It was the judgment of the court that defendant should have her title quieted to an undivided one-fourth of Section **3**, and costs were awarded to her.

We have no intention of taking up in minute and tedious detail each of the five general errors assigned by plaintiff with all 40 of their modifications and sub-headings and the sixteen supporting propositions of law. Many of them are answered sufficiently when we quote the ancient maxim, "Equity regards the substance rather than the form."

### Attack on Patent

The principal contention of plaintiff, which is repeated time and again in their lengthy briefs, comprising in all 179 printed pages, is that a patent *proprio vigore* imparts to itself absolute verity and that it may not be attacked in any manner save by an action brought before the state land commissioner, and that a claim in equity such as is presented by defendant in the case at bar is a collateral attack upon a patent which the law will not countenance. Based upon this reasoning, plaintiff believed all that was necessary as a predicate for quieting her title was the introduction of her patent, and that she thereby not only established her own right, but also precluded any showing of a defense thereto. This was, of course, an insufficient predicate for affirmative relief, because we decided, in City of Phoenix v. Hughes, 36 Ariz. 399, 286 P. 191, 193, that a suit to quiet title is one of equitable cognizance and that when parties resort to it their cause must affirmatively present some equities; i. e.,

"\* \* \*. They must not only show that the interest they seek to cancel is adverse to theirs, but that it would be inequitable to let it stand. \* \* \*"

This court has never undertaken directly to answer the problem of what constitutes a collateral attack upon a patent nor how a direct attack thereon should be prosecuted. However, in Campbell v. Flying V Cattle Co., 25 Ariz. 577, 220 P. 417, 421, we said:

"When, therefore, the land department, upon which devolves the duty of determining the character of the state's land and of knowing at the time of the sale of any particular tract that it does not contain mineral in paying quantities, reaches a decision on the question, its conclusion is final, and a patent or other muniment of title based thereon and issued by it is indefeasible, *unless it 'be attacked by the state or an individual having a prior legal or equitable claim to the land* and by no one else, and even the state can proceed for the annulment of its patents only where its own interests are concerned, and not for the sole purpose of protecting the interests of private individuals. In order to avoid a patent it must be annulled in a direct proceeding, in equity, for as a general rule a grant or patent from the state cannot be collaterally impeached, unless it is void on its face.' 32 Cyc. 1095." (Emphasis supplied.)

We note also that the following occurred in Union Oil Co., v. Norton-Morgan Commercial Co., 23 Ariz. 236, 202 P. 1077, 1078; there one Starkweather secured a certificate of purchase of state lands; the Norton Morgan Commercial Company docketed a judgment against Starkweather, who had declared a homestead on the tract. A patent later issued to persons to whom Starkweather's certificate of purchase had been assigned. We said, "\* \* \* So if defendants secured liens by attachment or judgment upon premises while the contract to purchase stood in Starkweather's name, those taking under Starkweather would take, subject to such liens." This is certainly a tacit assumption that interests not declared on the face of the patent may nevertheless exist and be enforced by the courts against the lands in the hands of the patentee.

We also find this text statement in 73 C.J.S., Public Lands, § 107c:

"A suit to set aside a deed from the state cannot be maintained by a private citizen having no interest in the land; but the failure of the holder of the beneficial estate to appear before the register of the state land office and contest the patentee's right to a patent does not conclude such holder from asserting his right; and the view has been taken that one who has a prior equitable right to receive the patent, superior to that of the patentee, may enforce his equity by action, or, when

he is defendant, by answer, and the court may cause regular title to be vested in him and adjudge possession to him. Where the state officials are induced to issue a patent to state school land to the wrong person, the rightful claimant may charge the legal title of the patentee with the claimant's equitable right and have the holder of the patent and those with notice declared trustees for the rightful owner. * *.

"Equity has jurisdiction to determine whether a patent to state school lands was issued under an erroneous view of the law or through a gross or fraudulent mistake of the facts."

In Stevens v. Patten, 174 Okl. 582, 50 P. 2d 1106, it was held that the owners of equitable rights in real estate which were not recognized on the face of the patent issued by the state, could in an action in equity enforce their claims of ownership and that the ex parte issuance of a patent did not preclude such claims. The equitable owners had their title quieted against the claims of the patentee.

In Bludworth v. Lake (No. 1), 33 Cal. 255, a patent issued to one not holding the beneficial estate who had notice of the outstanding interests, and it was flatly held that he acquired no interest in the land thereby, that he held the naked legal title in trust for the owner of the beneficial estate, and that the court of equity would enforce the equitable rights whether the patentee intended to commit a fraud in procuring the patent or not; and it was further held that the failure of the holder of the beneficial estate to appear before the state land office and contest the patentee's rights did not preclude him in a court of equity.

In Snider v. Ostrander, 26 Colo.App. 468, 145 P. 283, 284, the owner of the equitable estate in certain lands brought suit in the state courts to quiet his title against the claims of the successors in interest to the patentee, Snider, who had been given the patent through clerical error, misdescription, inadvertence and mistake of fact. The defendants contended that the findings of the United States Land Office that the patentee had occupied, settled upon and improved the land in his patent were res judicata and binding upon the parties and the court. The court struck down this contention, saying that such findings made in ex parte proceedings cannot be res judicata and that the rule contended for applied.

"* * * to error of judgment in contests before the land officers where the only remedy is by appeal within the Land Department; but there has always existed in courts of equity the jurisdiction to correct mistakes where lands have been given one claimant which, upon unmistakable facts, belong to another. Johnson v. Towsley, 13 Wall. 72, 20 L.Ed. 485; Moore v. Robbins, 96 U.S. 530, 24 L.Ed. 848;

Shepley v. Cowan, 91 U.S. [330] 340, 23 L.Ed. 424."

The court further stated:

" * * * There is a seeming conflict of authority as to whether the cancellation of a patent can be had upon complaint made by any other than the United States government; but there seems to be no doubt as to the right of the courts, in contests between private citizens, in which the United States has no interest or has parted with the legal title to the lands in dispute, to declare the holder of such title a trustee holding the same for the use and benefit of the true and equitable owner of the lands and require a transfer of such title in the manner approved by courts of equity, * * *."

Two cases from other jurisdictions supporting the proposition that the courts will recognize and enforce rights not apparent on the face of a patent are Jackson's Lessee v. Williams, 10 Ohio 69, 70, and McKinney v. Bode, 33 Minn. 450, 23 N.W. 851.

Moreover in the instant case fraud and deceit were alleged by defendant, and the evidence amply supports the trial court's finding to the effect that plaintiff failed to disclose the true facts to the state land commissioner when she applied for and obtained her patent. In 19 Am.Jur. Equity, Sec. 38, the law is stated:

" * * * It is said that fraud in equity is infinite and that in this forum many acts, transactions, or circumstances are considered fraudulent which would not necessarily be so regarded at law. Doubtless, in equity fraud includes situations from which it appears that one person has obtained an unconscionable advantage over another. * * *"

See also 30 C.J.S., Equity, § 50 b., e. and f. A court of equity is not restricted by the same rigid rules as the law courts in the investigation of fraud and in the evidence and proofs required to establish it; indeed, when a situation operates as a fraud upon a party equity will often actively interfere to give him relief. We find the law to be well settled that there is no other ground on which jurisdiction in equity is so readily entertained and so freely exercised as in fraud cases.

In conjunction with the contention that equity has no jurisdiction to impress a trust upon a patentee of state school lands, it is urged by plaintiff that the state land department is the tribunal which has exclusive original jurisdiction to decide to whom a patent should issue, and its issuance thereof is a final determination that the patentee is at that time the owner of the legal and equitable estate in the land, and no other person has any rights therein. Appellant argues that to upset such a determination, the proceedings before the state land department must be reopened

and the patent cancelled. We disagree. We hold that an ex parte determination by the state land department that a patent should issue to plaintiff does not preclude equity from impressing that title with a trust in favor of defendant where it is shown that defendant has a superior right. The State of Arizona has no interest whatsoever in these proceedings or the decision reached herein, for it has parted with its title after receiving full payment for its lands. The matter of the proper administration of school lands has absolutely nothing to do with this case, and the repeated insistence that public policy of the United States and of this state requires the procedure contended for by plaintiff, is unwarranted. We have examined the cases cited by plaintiff, Campbell v. Muleshoe Cattle Co., 24 Ariz. 620, 212 P. 381; Boice v. Campbell, 30 Ariz. 424, 248 P. 34, and Murphy v. Howard Copper Co., 28 Ariz. 42, 235 P. 147, and do not find them in disharmony herewith. They stand for the principle that where conflicting claimants for the same tract of land present their case to the state or federal land commissioner for determination, a decision awarding a lease or patent thereof to one claimant may not be attacked by the other in a collateral proceeding, but rather the statutory method of appeal affords the only remedy. In principle they are the same as Arizona Public Service Co. v. Southern Union Gas Co., 76 Ariz. 373, 265 P.2d 435, recently decided by this court. We have also examined Steel v. St. Louis Smelting & Refining Co., 106 U.S. 447, 1 S.Ct. 389, 27 L.Ed. 226, and Irwin v. Wright, 258 U.S. 219, 42 S.Ct. 293, 66 L.Ed. 573, cited by appellant. In the Steel case at pages 393 and 395 of 1 S.Ct., there is frank recognition of the fact that equitable rights not appearing on the face of the patent may be enforced in the courts rather than the land office. As for the Irwin case, it does not appear to us to be on point. Flatly contrary to the position taken by plaintiff are Hughes v. United States, 4 Wall. 232, 71 U.S. 232, 18 L.Ed. 303; United States v. Stone, 2 Wall. 525, 69 U.S. 525, 17 L.Ed. 765; Moore v. Robbins, 6 Otto 530, 96 U.S. 530, 24 L.Ed. 848, and the well-reasoned and authoritative opinion of Mr. Justice Miller, Johnson v. Towsley, 13 Wall. 72, 80 U.S. 72, 20 L.Ed. 485. It is a fundamental principle of natural justice that every man is entitled to his day in court. Defendant never had her day before the state land commissioner to present her side of the case. Certainly the practical administration of justice and adjudication of the rights of the parties can be better done at this stage in the court than in the administrative body. We see no reasons of public policy nor any provisions of statutory law (neither in the Enabling Act, sections 24–30, nor anything in Chapter 11, A.C.A. 1939) which dictate that the court of equity should refuse to hear defendant's case. We hold that the rule forbidding collateral attacks upon patents not void upon their

face does not preclude a court of equitable jurisdiction from impressing a trust upon the patentee, the holder of the naked legal title, for the benefit of the owner of the equitable interest in the lands.

### Certificate of Purchase

Plaintiff contends that the owner of a certificate of purchase of state school lands owns rights in personam, but owns no rights in real property. Just how this helps her case we cannot readily perceive, but such an issue is made of it we feel obliged to answer

■ A sale of school lands constitutes a contract with the purchaser by the state whereby the state undertakes that it will issue a certificate of purchase to the buyer, and upon the fulfillment of the terms thereof it will patent the land to him. The obligation of the state will be enforced by the courts in specie, Campbell v. Flying V Cattle Co., supra, 25 Ariz. 577, 220 P. 417 (issuance of certificate of purchase may be enforced by mandamus), and Alberts v. McGirk, 51 Ariz. 510, 78 P.2d 483. The statute on the matter, Section 11–416 A.C.A. 1939, declares:

"The certificate of purchase shall entitle the purchaser and his heirs, or in case of an assignment filed with and approved by the commissioner, his assigns, to the possession of the lands therein described, to maintain actions for injuries thereto, or to recover possession thereof, unless such certificate has become void by forfeiture. The certificate may be recorded as deeds of conveyance."

Likewise, in Section 11–421 A.C.A.1939, it is declared:

"* * *. If the purchaser has died, and the land described has been sold and confirmed by order of court, the patent shall be issued to the purchaser to whom confirmation of sale was made; if the estate of the deceased person is distributed by order of such court, the patent shall be issued to the heirs of said deceased person, or to the person to whom the lands were distributed. * * *"

We decided in Union Oil Co. v. Norton-Morgan Commercial Co., supra, 23 Ariz. 236, 202 P. 1077, 1078 that the owner of a certificate of purchase owned an estate in real property, saying:

"* * *. From an examination of the law, sections 59–69, Land Code, it will be seen that the state recognizes that the contract purchaser has secured valuable property rights—rights that are inheritable and assignable. Our statute (paragraph 1363 Civ.Code) makes all property, real, personal, and mixed, liable to execution. Subdivision 5, paragraph 5552, Civil Code, defines any inheritable interest in land as real property. The Land Code makes the interest of the contract purchaser inheritable and assignable. Sections 63

and 69. Speaking of a right somewhat similar, to wit, the right of the locator of a mining claim, the Supreme Court of the United States, in Bradford v. Morrison, 212 U.S. 389, 29 S.Ct. 349, 53 L.Ed. 654, quoting from Forbes v. Gracey, 94 U.S. 762, 24 L.Ed. 313, said:

" 'This claim may be sold, transferred, mortgaged, and inherited, without infringing the title of the United States.'

"Paragraph 3633, Civil Code, makes docketed judgments liens on all real property of judgment debtors except homesteads."

\* \* \* \* \* \*

"\* \* \* It is quite clear that any mortgage or incumbrance upon the title of the state in any of its grant lands would be void because in conflict with the prohibition contained in section 3 article 10, supra (of the Constitution of Arizona), but it is equally clear that this provision was never intended to limit or restrict the freedom of the purchaser to sell, mortgage, or incumber his interest in lands contracted from the state."

It was further held that "The Arizona homestead is of real property \* \* \*" and that a homestead declared on lands for which no patent had issued, but for which the declarant held a certificate of purchase, was a valid homestead, and that a judgment lien would not attach to such real property.

### The 1947 Roland Cummings-Marjorie Cummings Deed

██ It was found by the lower court that when Roland Cummings owned the undivided one-half of Section 3, he owned it as community property, with his wife, defendant here. That being so, the Cummings-Cummings deed of October 20, 1947, is effective for the purpose of making the grantee a tenant in common with her husband, the grantor, and effective for the purpose of creating in the grantee a record paper title. Plaintiff, however, makes the false assumption that defendant's rights flow entirely from the deed and not from community property rights, and accordingly it is urged that the deed of October 20, 1947, was a nullity and could not operate as an effective conveyance or grant of any interest because the real property was located in Arizona and a foreign court could not adjudicate any issues or make any orders concerning it. The proposition contended for by plaintiff is not the law. When equity has jurisdiction of the parties it may adjudicate their interests in real property lying outside the territorial jurisdiction, and acting in personam, it will make such orders as the disposition of the case warrants. It is immaterial that the decree of the court could not of its own force transfer an interest in the realty, for equity

may use its contempt process on the person, and compel the parties to execute deeds, releases, quitclaims, etc., which are effective of their own force. Penn v. Lord Baltimore, 1 Ves.Sr. 444, 27 Eng.Repr. (full reprint) 1132, and for the actual decree in the case, see Penn v. Lord Baltimore, Ves.Sr. Supp. 194, 28 Eng.Repr. (full reprint) 498. This court enunciated the same principle in Butterfield v. Nogales Copper Co., 9 Ariz. 212, 80 P. 345, and reiterated it in Santa Cruz Ranch v. Superior Court, 76 Ariz. 19, 258 P.2d 413. See also, 19 Am.Jur. Equity, Sec. 25.

### Partnership

■ The word "partnership" is strewn through appellant's briefs like raisins in a fruitcake. It is her theory that she and Roland Cummings were partners, that the California court had no jurisdiction in the divorce action to order Roland Cummings to execute a deed without ordering dissolution of the partnership and an accounting, and that the assignment of the certificate of purchase by Roland Cummings to her in 1947 was settlement of the partners inter sese of their partnership obligations. This would make the situation comparable to Cummings v. Weast, 72 Ariz. 93, 231 P. 2d 439, and leave defendant with the little end of the horn once again.

We have already pointed out that the California court having jurisdiction of the person of Roland Cummings had power (whether improvidently exercised or not) to order him to execute a deed to his wife. Such decree and deed were of course not res judicata or binding as to persons not parties or privies to that suit, and thus it would have been possible for Florence Kennedy to prove in this action that a partnership did exist, and that her property rights were wrongfully and erroneously attempted to be wrested from her by the California decree which was made without jurisdiction of her person or of those property rights. But that was not the theory of plaintiff's case. The lower court, on conflicting evidence, resolved the matter when it found no partnership between Florence Kennedy and Roland Cummings ever existed, and it is clear there was sufficient basis for such finding as to the crucial period of time, which was the time immediately prior to the execution of the 1947 deed.

It would unduly extend this already lengthy opinion to treat all of the minor points raised in the briefs. Suffice it to say we have carefully examined them and find them to be without merit.

Judgment affirmed.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concur.