464 P.2d 626

**Eva Greene DAY, Appellant,**

v.

**'George A. WISWALL, as Executor of the Estate of Mary Greene Wiswall, aka Mary G. Wiswall, deceased, William Cornell Greene, Florence Louise Greene Sharp, 'Clarence Kirk Greene, as Executor, as 'Trustee, and in his individual right, and 'Charles Harrison Greene, as Executor, and in his individual right, Appellees.**

**No. 2 CA–CIV 669.**

Court of Appeals of Arizona.

Division 2.

Jan. 28, 1970.
Rehearing Denied April 1, 1970.
See 12 Ariz.App. 26, 467 P.2d 250.
Review Denied June 23, 1970.

See also 11 Ariz.App. 314, 464 P.2d 634.

Fennemore, Craig, von Ammon & Udall, by John J. O'Connor, III, and Robert P. Robinson, Phoenix, for appellant.

Gentry, McNulty, Toci & Borowiec, by James S. McNulty, Jr., Thomas A. Thode and Philip E. Toci, Bisbee, Favour & Quail, by Keith F. Quail and John M. Favour, Prescott, DeConcini & McDonald, by John R. McDonald and J. Wm. Brammer, Jr., Tucson, Polley & Talmadge, by Wesley E. Polley, Bisbee, for appellees.

HOWARD, Chief Judge.

Appellant contends that the trial judge wrongfully dismissed her complaint against one defendant and granted summary judgment to others in her suit to enforce a California judgment.

Mary Greene Wiswall died in 1955. She left extensive property, and administration proceedings were eventually commenced in Arizona, California, and Sonora in the Republic of Mexico. Some question appears as to whether the domiciliary administration was in Mexico or in Cochise County, Arizona, but it is clear that it was not in California. Appellant, Eva Greene Day, is the daughter of the late Mrs. Wiswall's first husband, long deceased, by the latter's first wife. Mrs. Wiswall left a will in which she bequeathed $2,500.00 to appellant and disposed of the residue and great bulk of her estate to her own six natural children, or, after life income trusts, to their children. The Arizona executor of Mrs. Wiswall's will, George A. Wiswall, and four other objects of Mrs. Wiswall's bounty are the appellees here.

Shortly after Mrs. Wiswall died, appellant filed a claim against the Arizona estate to recover certain properties asserted to be hers or held for her benefit, or their value in the amount of $2,500,000.-00. When the claim was denied, appellant commenced suit in the Superior Court of Cochise County to have certain estate property declared to be held under a constructive trust for her benefit. She subsequently commenced a similar suit in California against most of the beneficiaries of the will and the three executors appointed in the California probate proceedings, one of which was the Arizona executor, George A. Wiswall. All of the appellees here were defendants in the California suit, and they appeared and contested appellant's claims. George A. Wiswall was not sued in his representative capacity. Appellant was denied recovery on the two theories she asserted in the California court which were identical to those advanced also without success in Arizona. See Day v. Wiswall's Estate, 93 Ariz. 400, 381 P.2d 217 (1963). Appellant prevailed, however, on a third theory which was advanced only in the California suit i. e., that her stepmother had made a contract with her father before his death in 1915 to provide for appellant in her will as one of her own children, share and share alike.

The judgment in appellant's favor was affirmed by the Supreme Court of California in Day v. Greene, 59 Cal.2d 404, 29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802 (1963). The terms of the judgment are, in pertinent part as follows:

"IT IS ORDERED, ADJUDGED AND DECREED that plaintiff Eva Greene Day at the death of Mary Proctor Green Wiswall on November 27, 1955, became, thereafter was, and now is, the owner of and entitled to a one-seventh undivided interest in the entire residual estate of said Mary Proctor Greene Wiswall, deceased, of whatsoever nature and wheresoever situated, including moneys and properties:

(1) In the Matter of the Estate of Mary Greene Wiswall, aka Mary G. Wiswall, Deceased, No. 7243, in the Superior Court of the State of Arizona, in and for the County of Cochise;

(2) In the Matter of the Estate of Mary Greene Wiswall, also known as Mary G. Wiswall, Deceased, No. 373,-076, in the Superior Court of the State of California, in and for the County of Los Angeles;

(3) In the Probate Proceedings involving the Estate of Mrs. Mary G.

Wiswall, or Mary Greene Wiswall, including files numbered 126/58, 95/58 and 7/56, in the Court of First Instance of the Judicial District of Cananea, Sonora, Republic of Mexico; and

(4) In any other estates and in any other properties of said Mary Proctor Greene Wiswall, deceased, of whatsoever nature and wheresoever situated.

That plaintiff's aforesaid one-seventh undivided interest in the entire residual estate of Mary Proctor Greene Wiswall at the date of the death of decedent on November 27, 1955, as aforesaid, became impressed with a trust in favor of plaintiff, and any title or possession of said interest thereafter by any of the defendants herein was, is and shall be that of a trustee for the benefit of plaintiff herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff Eva Greene Day have and recover judgment against defendants Frank Townsend Greene, Florence Louise Greene Sharp, Clarence Kirk Greene, Charles Harrison Greene, Mary Virginia Greene Sturdivant Miller and William Cornell Greene, individually, and against Clarence Kirk Greene, Charles Harrison Greene, George A. Wiswall and Leo B. Ward, as executors and trustees, as follows:

1. For one-seventh of the residual estate of Mary Proctor Greene Wiswall, Deceased, including the moneys and properties heretofore described, which each of said respective defendants has received, or will receive, or become or will become entitled to receive, individually, or as executor, or as testatmentary trustee, under the terms of the will of Mary Proctor Greene Wiswall, deceased, of November 10, 1954, or by reason of her death on November 27, 1955.

2. That defendants, and each of them, shall forthwith transfer and deliver to plaintiff one-seventh of all moneys and properties received to date by each of said respective defendants, individually, or as testamentary trustee under the terms of the will of said Mary Proctor Greene Wiswall of November 10, 1954, or by reason of her death, together with interest thereon at the rate of 7% per annum on said moneys and on the reasonable value of said properties from the date of this Judgment until transferred and delivered to plaintiff.

3. That in due and regular course of administration the defendant executors and testamentary trustees herein shall distribute directly to plaintiff Eva Greene Day one-seventh of the residue of all moneys and properties of the estate of Mary Proctor Greene Wiswall, deceased, as of the date of her death on November 27, 1955, including all those heretofore particularly mentioned, not theretofore transferred and delivered to plaintiff.

4. That the defendants herein, and each of them, shall promptly transfer and deliver to plaintiff upon receipt thereof, one-seventh of all other and further moneys and properties in addition to those theretofore transferred and delivered or distributed to plaintiff, received by said respective defendants individually or as testamentary trustee under the terms of the will of said Mary Proctor Greene Wiswall of November 10, 1954, or by reason of her death.

5. (Deleted by signing Judge.)

6. (Deleted by signing Judge.)

7. This Court shall, and hereby does retain jurisdiction of the within numbered case 692,673 to make such other and further orders and decrees as it may deem necessary or proper to carry out the provisions of this judgment."

\* \* \* \* \* \*

The judgment was rendered on February 3, 1961 and was affirmed by the Supreme Court of California on April 11, 1963 with rehearing denied on May 8, 1963. On

February 3, 1966 appellant filed her complaint in the instant case in the Superior Court of Cochise County. Final distribution of the Wiswall estate, which consisted of various kinds of property as well as money, had not at that time been accomplished in the Probate Court of the same county. The complaint was appropriately subtitled, in accordance with the substance of its allegations and prayer, an "Action to Enforce Foreign Judgment." No attempt was made to state a cause of action on the claim underlying the California judgment, as opposed to the judgment itself. All of the appellees joined in a motion made by George A. Wiswall, as executor, to dismiss the complaint as to him for failure to state a claim upon which relief could be granted. All of the remaining defendants who were served with process, the appellees here, moved for summary judgment. All of the defendants' motions were granted.

Appellant's basic position is that the California judgment is entitled to full faith and credit in Arizona and enforcement according to its terms. Appellees' answers and motions raised a number of defenses to enforcement, including the lack of a final judgment for the payment of money, the ineffectiveness of the California judgment to bind the Arizona executors in their representative capacities in this state, and the statute of limitations.

Although the decree in this case does not necessarily require the defendants to convey land or an interest in land situated in the State of Arizona, we will discuss this case as if the decree from California in fact did require such a conveyance since a holding requiring full faith and credit to such a decree would a fortiori apply to personalty.

Article IV, Section 1 of the Constitution of the United States provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

The rationale of this constitutional provision is aptly expressed in Goodrich, Conflict of Laws § 208, at 391 (4th ed. 1964):

"* * * The judgment has determined that, under the law of the state where it was rendered, the plaintiff has or has not certain rights, and that the defendant is or is not under corresponding legal obligations. Those rights and obligations are recognized in the state where the judgment was rendered so long as the judgment remains in force. There seems no reason to assume the second court will render a better decision than the first in which the rights and obligations of the parties have been definitely settled in a manner easily capable of proof through the court records."

The term "judicial proceedings" appears in the Constitution without limitation in the full faith and credit clause. If one were to read the provision literally, the term must include equity decrees of all types. However, for dubious reasons, such full faith and credit is not uniformly given by the various state courts.[1]

In the development of systems of law in the so-called "civilized" world, it was recognized that the strict rules of primitive law were sometimes not adequate to do justice in certain cases. In England, the power to mitigate the severity of the strict law was originally vested in the king and later delegated by him to his chancellor who was at first an administrative and not a judicial officer and who remained a tribunal apart from the common law courts.

The early chancellors developed the habit of expressing legal principles in the manner and form of their ecclesiastical background —short and concise formulae. The repetition of these formulae over a period of years resulted in a group of maxims which still exist today even though many of

---

1. Full faith and credit does not preclude an inquiry into the question of the jurisdiction of the first court to render the judgment sought to be enforced i. e., jurisdiction over the parties and over the subject matter. Goodrich, Conflict of Laws § 209, supra.

them have long outlived their usefulness. One of these maxims is "equity acts in personam." Although, through the coercion of the person within the jurisdiction, chancery has been able to affect indirectly the title to immovable property in a foreign jurisdiction, the chancellors invariably disclaimed any right to adjudicate the title to a foreign res. Thus, the cases in which the chancellors did act were those in which the conscience of the party within the jurisdiction is affected by some equity and the foreign title is only incidentally involved.

So it is said that where the holder of the legal title is before the court, chancery may in consequence of breach of trust, breach of contract, or of fraud order him to execute a conveyance of foreign land. Muller v. Dows, 94 U.S. 444, 24 L.Ed. 207 (1877); Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912); Butterfield v. Nogales Copper Co., 9 Ariz. 212, 80 P. 345 (1905); Kennedy v. Morrow, 77 Ariz. 152, 268 P.2d 326 (1954).

The notion that an equitable decree which orders the conveyance of land cannot create a binding obligation is the last survival of an old dogma which is today shorn of most of its force. This doctrine seems to have been derived from the writings of Sir Edward Coke, 4 Inst. 84, where he made a distinction between decrees and judgments. According to Coke, the difference was that the court of equity was not a court of record and it could therefore only bind the person, but not his estate, nor the property of his goods and chattels. Whereas the common law proceeded upon fixed and invariable rules, chancery proceeded upon the discretion of a good man.

■ This reasoning was perpetuated by Chancellor Kent in Post v. Neafie, 3 Caines (N.Y.) 22, 35–36, seized upon by the legal text writers and has resulted in the final dogma that we have facing us today, to-wit: The decree is in its nature not the establishment of an obligation, but a method of enforcing an obligation—a mere

form of execution. Pennington v. Gibson, 16 How. 65, 14 L.Ed. 847. One problem with this reasoning today is that chancery has long been a court of record and indeed in the State of Arizona, the distinction between courts of equity and courts of law has been abolished. Manor v. Stevens, 61 Ariz. 511, 152 P.2d 133 (1944); Rees v. Rhodes, 3 Ariz. 235, 73 P. 446 (1890).

■ If the defendant is personally before a court of equity, why doesn't the court have the power to order him to convey foreign land? Such a decree is an effective judgment and determines conclusively his obligation to convey. This obligation remains binding upon the person of the defendant wherever found. Such a decree ought to be entitled to full faith and credit at the situs of the land. Normally, the decree will be made to effectuate some antecedent equity, growing out of trust or contract, but the constitutional effect of the decree should be independent of the ground upon which it is made, since a personal decree is equally within the competence of a court which has the defendant within its power, whatever its ground and however erroneous. Such a decree may perhaps be attacked upon the ground that its enforcement would violate some fundamental policy of the laws of the state where the land is situate, but such a question of policy should not be confused with jurisdiction.

Some courts have refused to enforce foreign decrees on the ground that a court of equity is without power to enforce any but its own decrees, nor can it adjudge the decree of any other court binding or punish the violation of any decrees but its own. Adams Co. v. Knapp, 213 Pa. 567, 62 A. 1112 (1906). Such an objection seems frivolous. The court is not asked to enforce a foreign decree; it is asked to recognize such a decree as affording a binding equitable obligation upon which a new decree may be founded. Certainly if it has power to enforce its own decrees founded upon contract, it has power to enforce its own decrees founded upon something else.

It should not matter whether the decree be founded upon some antecedent right or equity since, where the right exists solely by virtue of the decree, the obligation is none the less conclusive and binding. Certain decrees, therefore, create obligations legal as well as equitable, and the old distinction is gone. But in its place we find the courts making another distinction.

Hence, it is still possible to distinguish between decrees and to argue that the recognition that the decree for money creates an obligation does not extend to other equitable decrees. There appears to be no sensible reason for this distinction. The decree assumes substantially the same form whether it be for the payment of money or other equitable relief; it is formally but an order to the defendant to do an act which may be the payment of $1,000.00 or the execution of a deed to Blackacre. Regarding their own decrees, courts place orders to pay money and to convey land upon the same basis. Courts of equity in their attitude towards their own decrees and towards foreign decrees which do not involve a domestic res, brush aside the distinction and recognize the decree for conveyance as a binding obligation. Santa Cruz Ranch v. Superior Court, 76 Ariz. 19, 258 P.2d 413 (1953); Kennedy v. Morrow, 77 Ariz. 152, 268 P.2d 326 (1954); Butterfield v. Nogales Copper Co., supra.

It is difficult to see why in such a matter as this the effect of an equitable decree should be different from that of a legal judgment. The doctrine that a cause of action is extinguished by or merged in a legal judgment results from the policy that there be an end to litigation. The same considerations of policy demand that equal effect be given to the equitable decree, and it is believed that this conclusion finds adequate support in the cases.

It now is generally accepted that a foreign decree for money will be given full faith and credit. If the doctrine applies to decrees of this type, it should equally extend to decrees ordering a conveyance. The courts of the situs should recognize such a decree as a final determination of a personal obligation to convey, an obligation analogous to that arising from a valid contract. It should be accepted as a valid cause of action in the jurisdiction of the situs and if a suit be brought upon it and personal jurisdiction obtained of the person bound, a new decree should be rendered.

The "anti-full faith and credit—to equitable decree courts" argue that the doctrine forbidding a foreign state from directly affecting title is stripped of all practical force if a decree "in personam" is conclusive and must be enforced by the courts of the situs. If this means that the courts of the situs cannot be compelled to issue process upon a foreign decree, no one will dissent, but if it implies that the foreign decree cannot be made a foundation of a *new* decree without violent infraction of settled doctrine, it may well give us cause to reflect. Would such acceptance of a foreign decree violate any sound policy of the sovereignty of the situs? Does the dogma that a foreign decree cannot affect the title to domestic land mean anything more than it must first be established as a "judgment" in a court where the land lies? As for the policy of the state, it can have no interest in the forms of procedure. All that the state can be legitimately interested in is that no change is made in its laws of property and that the mode of transfer complies with its laws. The foundation of the decree is the personal obligation created by a foreign decree but the fact this obligation concerns domestic land is no obstacle unless the court is prepared to hold that no similar obligation can be created by contract or trust made beyond the territorial boundaries of the state.

The "Granddaddy" cases in the United States which have perpetuated this outmoded doctrine are the cases of Bullock v. Bullock, 52 N.J.Eq. 561, 30 A. 676, 27 L.R.A. 213 (E. & A.1894), affirming 51 N.J.Eq. 444, 27 A. 435 (Ch.1893), as well as Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909).

The efficacy of these decisions as *precedent to support the continued denial* of full faith and credit to equity decrees requiring the doing of something other than the payment of a sum certain in money is well discussed in the case of Higginbotham v. Higginbotham, 92 N.J. Super. 18, 222 A.2d 120 (1966), wherein the New Jersey court held that the term "judicial proceedings" in the full faith and credit clause includes equity decrees of all types,[2] repudiating the doctrine of *Bullock* and *Fall*. In fact, the *Higginbotham* case points out that the case of Fall v. Eastin, supra, does not really stand for the proposition that full faith and credit will not be extended to all equity decrees from a sister state. In Fall v. Eastin, after reviewing a number of decisions, the majority concluded that:

"* * * however plausibly the contrary view may be sustained, we think that the doctrine that the court, not having jurisdiction of the *res,* cannot affect it by its decree, nor by a deed made by a master in accordance with the decree, is firmly established. * * *"

Justice McKenna, the author of the majority opinion, found this doctrine entirely consistent with the full faith and credit clause which, according to him:

"* * * does not extend the jurisdiction of the courts of one state to property situated in another, *but only makes the judgment rendered conclusive on the merits of the claim or subject-matter of the suit.* * * *"* (Emphasis added.)

Justice Holmes, who concurred specially, regarded the Washington decree as a personal obligation binding upon the husband and entitled to full faith and credit in Nebraska.

2. We do not by this opinion decide the application of the doctrine of full faith and credit to child custody decrees. It has been said that full faith and credit does not apply to such decrees. See Bachman v. Mejias, 1 N.Y.2d 575, 154 N.Y.S.2d 903, 136 N.E.2d 866 (1956), and the dissenting opinion of Mr. Justice Frankfurter in Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d

In any event Fall v. Eastin can be and has been distinguished on other grounds. Higginbotham v. Higginbotham, supra; Currie, Full Faith and Credit to Foreign Land Decrees, 21 U.Chi.L.Rev. 620, at 648 et seq. (1954).

To support their contention that full faith and credit cannot be given to the decree in this case, the appellees cite Restatement of Conflict of Laws § 449 and Porter v. Porter, 101 Ariz. 131, 416 P.2d 564 (1966).

The present Restatement of the Law of Conflict of Laws § 449 states:

"(1) A valid foreign judgment that the defendant do or refrain from doing an act other than the payment of money will not be enforced by an action on the judgment."

In Spettigue v. Mahoney, 8 Ariz.App. 281, 445 P.2d 557 (1968), we held when the law is not settled upon a particular subject, the law of the Restatement will be looked to with favor. We do not, however, believe that this court should look with favor upon a doctrine which is senseless in modern times. In addition, Restatement of the Law (Second) Conflict of Laws § 434(b) (Tent. Draft No. 10, 1964) now states:

"A valid judgment that orders the doing of an act other than the payment of money or that enjoins the doing of an act may be enforced in other states."

The use of the word "may" does not give the court discretion. It only means that a valid foreign judgment that orders the doing of an act other than the payment of money or that enjoins the doing of an act will be given the same recognition as any other judgment.[3]

1008 (1958), where the majority declined to decide the point. On the other hand in Ogletree v. Crates, 363 S.W.2d 431 (Tex.1963) it was held that a foreign custody decree is res judicata as to conditions then existing.

3. See Comments and Reporter's Notes, Restatement of the Law (Second) Conflict of Laws (Tent. Draft No. 10), supra.

As to the Arizona case of Porter v. Porter, supra, it is an unusual case with unusual facts which distinguish it from the case at bar. It seems to rest upon the notion that the Arizona courts will not give full faith and credit to the judicial proceedings of another state if that state does not give full faith and credit to the judicial proceedings of the State of Arizona.

The development of Anglo-American law exhibits progressively the annihilation of arbitrary distinctions. That one may escape the operation of the judicial decree by going into another state is surely a reproach to any system of legal administration.

■ As times change so does the law. Arbitrary distinctions have no place in modern jurisprudence. We therefore hold, that under the facts of this case, the court erred in dismissing the complaint and in granting summary judgment in favor of appellees William Cornell Greene, Florence Louise Greene Sharp, Clarence Kirk Greene, and Charles Harrison Greene in their individual capacities.

■ The court was, however, correct in dismissing the complaint and granting summary judgment as to George A. Wiswall, as executor of the Estate of Mary Greene Wiswall, deceased, and as to Clarence Kirk Greene as executor and trustee, and Charles Harrison Greene, as executor, since the general rule is that jurisdiction does not exist to sue a foreign administrator, and that he must be sued in the jurisdiction issuing his letters. Farnsworth v. Hubbard, 78 Ariz. 160, 277 P.2d 252 (1954).

The appellees claim that the California judgment is barred by the statute of limitations. A.R.S. § 12–544 provides:

"There shall be commenced and prosecuted within four years after the

cause of action accrues, and not afterward, the following actions:

*    *    *    *    *    *

"3. Upon a judgment or decree of a court rendered without the state *  *."

It is conceded by all parties that the judgment of the California trial court was entered more than four years prior to the time suit was filed on the judgment in Arizona on February 3, 1966. However, the California judgment was appealed first to the intermediate California appellate court and then to the California Supreme Court, which finally decided the case on April 11, 1963.

■ In an action on a foreign judgment its validity and finality are to be tested by the law of the jurisdiction where such judgment was rendered. Baker v. Erbert, 199 Kan. 59, 427 P.2d 461 (1967). California's Code of Civil Procedure § 1049, West's Annotated states:

"An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, *  *." [4]

■ We hold that the limitation period set forth in A.R.S. § 12–544, Subsection 3, does not begin to run against an action on a foreign judgment until its final determination on appeal or until the time for appeal has passed. Tornquist v. Johnson, 124 Cal.App. 634, 13 P.2d 405 (1932); Baker v. Leary, 70 Nev. 152, 261 P.2d 1013 (1953), since no "cause of action" accrues until the judgment is final.

■ The cause of action having been commenced within the four year period, the claim is not barred by limitations.

For the foregoing reasons, the judgment is affirmed as to George A. Wiswall, Clarence Kirk Greene, and Charles Harrison Greene in their representative capacities and reversed as to William Cornell Greene, Florence Louise Greene Sharp, Clarence Kirk Greene, and Charles Harrison Greene, as individuals.

---

4. See also Turner v. Donovan, 52 Cal.App. 2d 236, 126 P.2d 187 (1942), appeal dismissed, 317 U.S. 599, 63 S.Ct. 260, 87 L.Ed. 489 (1942).

ALICE N. TRUMAN, Judge, Superior Court, and L. RAY HAIRE, J., Court of Appeals, Division 1, concur.

NOTE: Judges KRUCKER and HATHAWAY having requested that they be relieved from consideration of this matter, Judges TRUMAN and HAIRE were called to sit in their stead and participate in the determination of this decision.