546 P.2d 358

**Doris Jikaku NOBLE, Appellant and Cross-Appellee,**

v.

**Jorgen Sehested NOBLE, Appellee and Cross-Appellant.**

**No. I CA–CIV 2741.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 26, 1976.

Rehearing Denied March 26, 1976.
Review Denied April 20, 1976.

Snell & Wilmer, by Arthur P. Greenfield, Daniel J. McAuliffe, Phoenix, for appellant and cross-appellee.

Warner & Angle, by Jerry L. Angle, Peter D. Ambelang, Phoenix, for appellee and cross-appellant.

## OPINION

JACOBSON, Presiding Judge.

The questions raised by appellant-cross-appellee Doris Noble in this case are whether the trial court had jurisdiction over real property located in Denmark, and if it had jurisdiction whether it correctly determined that the Denmark property and a parcel of real property located in Yuma, Arizona, were community property. In addition, appellee-cross-appellant, Jorgen Noble, seeks review of that court's finding that an item of personal property, a painting, was the sole and separate property of Mrs. Noble.

The parties to this divorce action were married in New York in 1956. Since that time and until their separation they resided primarily in Phoenix. At the time of the marriage, Mrs. Noble was a woman of some wealth, having received a substantial inheritance from her deceased former husband. Mr. Noble entered into the mar-

riage with no separate property. Neither party contributed earnings to the community until 1963 when Mr. Noble became engaged in real estate sales; all expenses were met from the income from Mrs. Noble's trust resulting from her former marriage.

The parties maintained at various times during the marriage joint bank accounts in Phoenix; Houston, Texas; and Denmark. In 1958 they purchased a manor farm in Denmark, known as "Tangegaard", the purchase being completed in September 1959. The real property in Yuma, Arizona, known as the "Bend Ranch", was purchased in 1961. It is the status of these two properties and the income from the Bend Ranch property which appellant Mrs. Noble asks us to review.

In 1965, the Nobles opened an antique shop in Scottsdale, Arizona. One of the purchases made in connection with this shop was a painting, the "Boucher painting"; cross-appellant Mr. Noble questions the trial court's findings in regard to that painting.

The parties separated in 1965 and Mrs. Noble filed for divorce in 1971. The trial court granted a decree of divorce and made the following findings in regard to the contested properties:

"(a) That the farm known as Tangegaard, located in Denmark, and more particularly described as follows:

"Cadastral Numbers 2a, 3b, 6d, 6e, 21c, 2c and 21b of the Village of Albjerg, and 17d, 18i, 19b, 45a and 45b of the Village of Oure, all parcels of the Parish of Oure, Denmark, of an area of 39.9050 hectares, 1.1470 hectares of which are roads,

was at the time of its acquisition and is now the community property of the parties, subject to plaintiff's separate property lien in the amount of $50,000.00, representing the original acquisition price of $35,000.00 and capital improvements of $15,000.00 which were advanced by plaintiff to the community estate from her separate property estate.

"(b) That an undivided one-fourth interest in the citrus farm known as Bend Ranch, located in Yuma County, Arizona, and more particularly described as follows:

"That portion of the Southwest Quarter of the Southwest Quarter (SW¼ SW¼) of Section Twenty-one (21), Township Nine (9) South, Range, Twenty-three (23) West, G&SRB&M as more particularly described in that instrument recorded in Docket 298 at page 398 of the records of the Office of the County Recorder of Yuma County, Arizona;

"SUBJECT TO all reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions and restrictions as may appear of record,

was at the time of its acquistion and is now the community property of the parties, subject to plaintiff's separate property lien in the amount of $9,000.00, representing the original acquisition price which was advanced by the plaintiff to the community estate from her separate property life insurance.

"(c) That the income and profits of the Bend Ranch described above are in the community property of the parties.

\*　　\*　　\*　　\*　　\*　　\*

"(g) That the Boucher painting was at the time of its acquisition and now remains the sole and separate property of the plaintiff."

In regard to the disposition of the Tangegaard Farm the trial court entered the following order:

"In the absence of a binding executed agreement or settlement between the parties on or before March 1, 1974, as to the division, sale or other form of compensation between the parties, the Tangegaard real property shall be sold.

. . .

\*　　\*　　\*　　\*　　\*　　\*

"After payment of costs of sale, the plaintiff shall first be reimbursed the

$50,000.00 separate property advancement. The remaining sale proceeds shall be divided equally between the parties.

"In the event Tangegaard must be sold under this order, the parties shall cooperate to accomplish a prompt sale, consistent with obtaining the fair market value, and each must execute any and all documents necessary to accomplish the foregoing."

In our review of the correctness of the foregoing determinations we will observe the rule that all evidence and reasonable conclusions from the evidence are to be viewed in a light most favorable to supporting the decision of the trial court regarding the nature of property as community or separate. Nace v. Nace, 104 Ariz. 20, 448 P.2d 76 (1968).

We first deal with the issue of whether the trial court had jurisdiction to determine the interests of the parties in Tangegaard Farm located in Denmark. Mrs. Noble argues that under well-settled principles of common law, a court of one state cannot directly affect or determine the title to land in another state or foreign country, citing Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909); Sharp v. Sharp, 65 Okl. 76, 166 P. 175 (1916); Brown v. Brown, 46 Wash.2d 370, 281 P.2d 850 (1955); and Schluter v. Schluter, 130 Cal. App. 780, 20 P.2d 723 (1933). From this premise she argues that the trial court's determination that the property in Denmark was community property affected the "title" to that property and this the court had no jurisdiction to do.

We agree that the courts of this state do not have jurisdiction to determine title to property in another state or foreign country. However, we do not view the trial court's determination of the interest of the parties in the Denmark property as determining the title to that property. Rather, we view the trial court's determination to simply be, as between the parties before the court, what interest they held in the foreign jurisdiction property. This the trial court may properly do. As was stated in Kennedy v. Morrow, 77 Ariz. 152, 268 P.2d 326 (1954):

"When equity has jurisdiction of the parties it may adjudicate their interests in real property lying outside the territorial jurisdiction, and acting in personam, it will make such orders as the disposition of the case warrants. It is immaterial that the decree of the court could not of its own force transfer an interest in the realty, for equity may use its contempt process on the person, and compel the parties to execute deeds, releases, quitclaims, etc., which are effective of their own force." 77 Ariz. at 161–62, 268 P.2d at 333.

This is likewise the holding in Rozan v. Rozan, 49 Cal.2d 322, 317 P.2d 11 (1957) cited by Mrs. Noble. Since she does not contend the court lacked authority to order the parties to sell the Denmark property, we hold the trial court had jurisdiction to determine the parties' interest in that property.

We note that appellant, while attacking the trial court's decision, does not challenge the applicability of Arizona law. We note too that appellee, while he maintains that Denmark law should govern and avers that the results under Danish law would be substantially the same as that reached by the trial court, did not offer into evidence proof of what the Danish law might be. While it may be that judicial notice may be taken of the laws of a sister state, see, Prudential Insurance Co. v. O'Grady, 97 Ariz. 9, 396 P.2d 246 (1964), the rule in regard to laws of foreign countries is that unless such laws be stated and proved, our courts will presume those laws to be the same as the law in Arizona. Worsham v. Bauchard, 65 Ariz. 243, 179 P.2d 229 (1947); Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 109 P.2d 845 (1941). In view of the foregoing, we hold that the trial court was correct in applying Arizona law to determine

the rights of these Arizona domiciliaries in the Denmark property.[1]

This brings us then to a determination of whether the evidence supports the trial court's finding that the interests of the parties in the Tangegaard property are community, subject to a lien in Mrs. Noble's favor for $50,000.00.

The basis of Mrs. Noble's claim that the Tangegaard property is her sole and separate property is bottomed on her argument that the property was purchased by a check drawn on the parties' joint checking accounts and the source of these funds were her sole and separate property. We agree, that under the authority of *O'Hair v. O'Hair,* 109 Ariz. 236, 508 P.2d 66 (1973), where separate funds are placed in a joint checking account, no presumptions arise that the owner of the separate funds made a gift of one-half of the funds to his or her spouse. There being no serious contention that the source of the funds in the joint checking account were other than Mrs. Noble's separate property, we likewise agree that the mere fact that Mrs. Noble placed her funds in a joint checking account with her husband is not conclusive of any intent that he be vested with joint ownership of these funds.

However, the no gift presumption applied to bank accounts by *O'Hair* does not follow through to jointly held (either as joint tenants, tenants in common, or community ownership) real property. *Becchelli v. Becchelli,* 109 Ariz. 229, 508 P.2d 59 (1973). In such a case, where title to real property is taken in the names of both husband and wife even though the source of the funds for the purchase of the property is the separate property of one, a presumption arises that the parties intended to own the property as community property. *Becchelli v. Becchelli, supra.* While we have some difficulty in reconciling the conflicting presumptions arising merely from the character of the property involved, we are of the opinion that both

*O'Hair* and *Becchelli* recognized the principle that in community property states, regardless of the original character of property as separate, the parties may, by their intent, transmute the character of separate property to community property. *Lawson v. Ridgeway,* 72 Ariz. 253, 233 P.2d 459 (1951); *Rundle v. Winters,* 38 Ariz. 239, 298 P. 929 (1931). Under existing case law, the court is aided in ascertaining the intent of the parties where real property is involved by a presumption in favor of community, *Becchelli v. Becchelli, supra,* while in the case of joint bank accounts no such presumption attaches and the court is left to the normal proof of the intention of the parties in placing the separate funds in joint names. *O'Hair v. O'Hair, supra.*

We are thus left with the task in this case of determining whether there was evidence before the trial court that the parties intended Tangegaard to be community property. In our opinion such evidence exists, but this intent is colored by what the parties conceived to be the state of the law as to separate and community property. It is further our opinion that the trial court's decision in placing a lien in Mrs. Noble's favor on Tangegaard is in accord with the specific facts of this case and the coloration on intent of what the parties perceived the law to be.

The reasonable inference to be drawn from the evidence in this case is that the parties intended to hold property acquired after their marriage in accordance with the law as they perceived it. The evidence is also such that the trial court could have found that the parties believed the law to be that any property owned by Mrs. Noble prior to her marriage was her sole and separate property, but that any income from that sole and separate property after marriage was community property, and any purchase made with that income was likewise community. The parties were under this impression when Tangegaard was purchased. After the purchase and in 1960, Mr. Noble, at least, became aware that the

---

1. We do not reach the question of the proper choice of law under conflict of laws analysis.

law in community property states was generally that income from such property, even after marriage, remained separate property. *Spector v. Spector,* 23 Ariz.App. 131, 531 P.2d 176 (1975). After obtaining this knowledge, in accordance with the parties' previous intent that their joint ownership of property acquired after marriage was to be held in accordance with what they perceived the law to be, Mr. Noble disavowed any interest in the Tangegaard property to the extent that the original purchase price and improvements made on Tangegaard came from Mrs. Noble's separate funds. The trial court implicitly found, and the evidence supports that finding, that Mr. Noble's disavowal as to the purchase price and improvements did not operate to change the original intent of the parties that Tangegaard was to be held as community property.

■ The evidence therefore supports the trial court's determination that the parties intended to hold Tangegaard as community property, regardless of the source of the funds used for its purchase, subject to the expressed disavowal of Mr. Noble that $50,000.00, representing the purchase price and improvements, was Mrs. Noble's separate property. The trial court gave effect to that intent and disavowal by holding the Tangegaard property to be community, subject to the separate lien in Mrs. Noble's favor for $50,000.00.

■ What we have stated as to the Tangegaard property is likewise applicable to the Bend Ranch property located in Yuma, Arizona. However, the Bend Ranch was purchased after the parties had acquired knowledge that the income from Mrs. Noble's separate property remained her separate property. In order to avoid the confusion resulting from the purchase of the Tangegaard property with Mrs. Noble's separate funds, the parties were under the impression that if they borrowed the money to make the down payment on the Bend Ranch Property there would be no question that this property would be community. To carry this intent into effect, and upon the advise of Mrs. Noble's trustee, this money was borrowed from a life insurance policy owned by Mrs. Noble prior to the marriage. In our opinion, the evidence strongly supports the conclusion that the parties fully intended that the Bend Ranch property was to be community and the fact that the source of the funds to make this purchase came from the possible separate property of Mrs. Noble was completely inadvertent. The evidence therefore would have supported a finding by the trial court that the Bend Ranch was community property subject to a community obligation to repay a loan made on Mrs. Noble's separate property, rather than imposing a separate lien on that property in Mrs. Noble's favor. However, there has been no cross appeal from that portion of the trial court's judgment imposing a separate lien in Mrs. Noble's favor on the Bend Ranch property and therefore we will not disturb the trial court's ruling in this regard. Having found that the Bend Ranch property itself was intended to be held in community, it follows that the income therefrom is also community. *Spector v. Spector, supra.*

Having found that the evidence supports the trial court's finding that both Tangegaard and Bend Ranch are community property, we turn to Mrs. Noble's contention that Mr. Noble is estopped to assert a community interest in that property. The claim of promissory estoppel is based primarily upon two letters, one dated in 1956 prior to the marriage, and the other dated 1960 subsequent to the Tangegaard purchase but prior to the Bend Ranch purchase. A portion of the 1956 letter reads as follows:

"For this reason, I state with the desire to be bound thereby as completely as I can be under the law that in the event of the end of our marriage by divorce, annulment or separation I would make no claim whatsoever against you for any money or any property or in any other fashion. By this statement I intend also to waive any right which I have or

might have to make any claim on account of any money or property in such event."

A portion of the 1960 letter stated:

"And any further investments we make in both our names will still continue to be yours only. According to the law it is not whose name the property is in that counts but from where the money came from that paid for the property, and as it was your money that paid for the investment, thay [sic] will continue to be your separate property."

The doctrine of promissory estoppel, approved in *Waugh v. Lennard*, 69 Ariz. 214, 211 P.2d 806 (1949) is enunciated in Restatement of Contracts, § 90 (1932) as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

 Mrs. Noble testified that she relied upon statements made in the 1956 letter in taking the Tangegaard property in joint names and the 1960 letter purchasing the Bend Ranch property. There is no doubt that reliance by the promisee upon the promise made by the promisor is a vital element to the doctrine of promissory estoppel. Like any other element of the doctrine, the question of reliance is one of fact. Our previous finding that the evidence supports the trial court's determination that the parties intended to hold Tangegaard and Bend Ranch as community property is inconsistent with the claim by Mrs. Noble that she relied upon Mr. Noble's promise that these properties would be her separate property.

 Moreover, and more importantly, the circumstances surrounding the making of the promise must be explored to determine whether in fact the promisee could reasonably rely upon the promise made. The evidence supports the finding that at the time the 1956 letter was written both parties, while recognizing the separate character of Mrs. Noble's property acquired prior to marriage, were under the mistaken belief that income from that property after marriage would be community. Also, at the time the 1960 letter was written, while their mistaken belief as to the character of the income from separate property had been corrected, the parties deliberately avoided the use of this income in purchasing the Bend Ranch property, but borrowed the money to assure, in their opinion, the community character of this property. Under these circumstances, the trial court could properly conclude that Mrs. Noble could not reasonably have relied upon Mr. Noble's promise or that his promise had any effect upon the acquisition of either the Tangegaard or Bend Ranch properties. In passing, we note that the trial court's granting of a lien on these properties in favor of Mrs. Noble's separate estate yields a fair result in regard to Mr. Noble's promise that he would make no claims on her separate property. We therefore hold that the trial court did not err in not applying the doctrine of promissory estoppel.

 The final issue to be resolved is Mr. Noble's contention that the trial court was incorrect that the "Boucher Painting" valued at $6,000 was the sole and separate property of Mrs. Noble. Mr. Noble's argument is that since the painting was purchased after he began contributing his earnings as a real estate salesman to the joint bank account the painting was purchased with community funds and was therefore community. We have already noted that the record supports a conclusion by the trial court that Mrs. Noble did not, at least after 1960, transmute her separate funds into community property by virtue of the joint checking account. *O'Hair v. O'Hair, supra.* The commingling of separate and community funds into one account does not transmute the entire account into a community account so long as the funds remain traceable. *Porter v. Porter,* 67 Ariz. 273, 195 P.2d 132 (1948). This is es-

pecially true where the community funds commingled are negligible in comparison to the separate funds. *Flynn v. Allender*, 75 Ariz. 322, 256 P.2d 560 (1953). Mr. Noble's earnings in 1963 came to an amount less than three thousand dollars. There is evidence to support a conclusion by the trial court that the entire account was not rendered community property by the addition of Mr. Noble's earnings in 1963.

Mrs. Noble selected and purchased the painting, Mr. Noble not participating. As previously noted, separate assets purchased with separate funds remain separate. *Horton v. Horton*, 35 Ariz. 378, 278 P. 370 (1929); and payments for separate uses out of an account containing traceable community and separate funds are deemed to be paid out of separate funds. *Blaine v. Blaine*, 63 Ariz. 100, 159 P.2d 786 (1945). The record, we find, contains sufficient evidence to support the trial court's determination that the Boucher painting was the separate property of Mrs. Noble.

For the reasons given above, the judgment of the trial court in all respects is affirmed.

HAIRE, Chief Judge, Division 1, and EUBANK, J., concurring.